Maris Chapman, Appellee,

*v.*

Aetna Casualty & Surety Co., Appellant.

426 S.W.2d 760.

(*Knoxville,* September Term, 1967.)

Opinion filed March 29, 1968.

Jack R. Brown, Chattanooga, for appellee.

E. Blake Moore, Chattanooga, for appellant.

Mr. Justice Creson delivered the opinion of the Court.

This is an appeal by the employer's insurance carrier from an adverse judgment rendered in the Chancery Court of Hamilton County, Tennessee, in a workmen's compensation proceeding.

The appellee, Maris Chapman, on November 9, 1966, filed a petition for benefits under the Workmen's Compensation Act for the death of her husband, Joe Chapman. At the time of his death, Joe Chapman was employed as a carpenter by Creighton, Ernst & Wallace. The Chancellor, after a full hearing, held that the employee's death was compensable and that the petitioner was entitled to a decree for full death benefits. An appeal has been timely perfected by Aetna, which seeks a reversal of the Chancellor's holding and a dismissal of the

case. The principal issue involved is whether or not the employee's death from heart failure is to be regarded as one arising out of his employment; that is, referable to a hazard of his employment.

The deceased employee had been a carpenter for more than fifteen years prior to his death. On November 22, 1965, he applied for and was given a job as a carpenter by the construction firm of Creighton, Ernst & Wallace. His particular job at the time in question here consisted of setting and cutting poles, and hanging crossarms to the erected poles, as part of a repair project the contractor was doing for Atlas Chemical Company.

On October 27, 1966, the appellee's decedent and others were notified that they would be terminated the next day, due to a slack in the workload caused by the imminent completion of the repair project. This notification is said to have been emotionally disturbing to the employee. He had difficulty sleeping that night and left early for work without breakfast the next morning. He did not actually work that day, October 28, 1966, with the exception of gathering some of his tools which were scattered over a large area. In the early afternoon he left his fellow workers to get a drink of water, and was found dead several minutes later, in a sitting position, on the ground near a water cooler.

The employee had a long history of heart trouble. He first became aware of the condition in 1961. In December, 1962, he was examined by a heart specialist, Dr. Fred Ballard, and was found to have a defective mitral valve and an enlarged heart. Between December, 1962 and the date of his death, the employee Chapman saw this heart specialist over thirty times. His condition grew progres-

sively worse until he was advised that he should quit work and undergo a corrective operation. He was hospitalized in March, 1966; and in June, 1966 received further electro shock treatments to normalize the heartbeat. He was advised that his life could only be prolonged by a heart operation. Without it, it was impossible, medically, to tell how long he might live; since the heart could fail at any time without any real strain.

■ The Chancellor held that the death resulted from an accident arising out of and in the course of his employment; and that "the notice of his termination and the physical exertion of his work aggravated his diseased heart condition and hastened his death." This appeal requires a determination of whether or not there is material evidence to support the conclusion of the Chancellor that this death arose out of the employment; that is, whether the death was caused by a hazard incident to the employment. *Ward v. Commercial Ins. Co.* (1963) 213 Tenn. 100, 372 S.W.2d 292. We are constrained to the conclusion that there is not.

The medical testimony offered by the petitioner was that of the County Medical Examiner. His testimony, so far as personal observation is concerned, was based on an examination of the employee's corpse following the death. This Medical Examiner was testifying as an expert witness. The only testimony he offered as to causation came in response to a hypothetical question. The assumptions embodied in the question were in part factually incorrect.

Upon our examination of the whole record, it is abundantly apparent that the testimony of the County Medical Examiner is, with respect to causation, no more than a

statement in the abstract that work and worry may aggravate an existing heart condition. On the other hand, there is testimony from the treating heart specialist, Dr. Ballard, which is not an abstraction, but is directed to the cause of death of Mr. Joe Chapman. No part of the testimony of the County Medical Examiner, nor any other evidence introduced by the petitioner, is material evidence to establish that the heart failure was causally related to any work engaged in by Mr. Chapman on the day of death.

■ It is true that the employee was on the job site at the time of his death, but, as this Court said in *Bowman v. Smith-Built Homes, Inc., et al.,* 221 Tenn. 102, 424 S.W. 2d 801 (1967), that fact is not determinative, in and of itself. It is significant that the employee did not work on the day of his death other than gathering his tools in preparation for leaving the place of employment.

■ The Chancellor placed great emphasis on the stress and strain resulting from the notification of termination of employment; that this stress aggravated the deceased's heart condition. If stress occurred which can be said to have aggravated the decedent's highly dangerous heart condition, this is precisely the same stress that the employee would encounter by reason of any lack of gainful work, whether before obtaining such or upon the termination of any particular period of work. In summary, the stress mentioned in this record as contributing in any sense to deterioration of Mr. Chapman's condition to the point of fatality is not referable to the employment by the construction company; but rather, and only, to the inevitable termination of such employment. We all know, as a matter of common knowledge, that almost all

construction jobs have an announced beginning and an estimated termination.

The rationale of the recent decision of this Court, cited above and factually similar to this present case, is quite applicable. In that case the following principles were relied on:

"(4) The phrase, 'in the course of,' refers to time and place, and 'arising out of,' to cause or origin; and an injury by accident to an employee is 'in the course of' employment if it occurred while he was performing a duty he was employed to do; and it is an injury 'arising out of' employment if caused by a hazard incident to such employment. *Shubert v. Steelman,* 214 Tenn. 102, 377 S.W.2d 940 (1964).

'(T)he mere manifestation of a heart condition without any proof of strain or overexertion at work does not show an accidental injury even though the development of the heart disease may have been hastened by the employee's usual and ordinary work.' 99 C.J.S. Workmen's Compensation, sec. 177 page 604; *Hagewood v. E. I. DuPont,* 206 Tenn. 239, 332 S.W.2d 660 (1960).

In Larson's Workmen's Compensation Law, Section 38.83, page 565, it is said:

'There must still be an unexpected result, and there must still be an exertion—some exertion—capable medically of causing the collapse. This can by no means be taken for granted. If heart failure overtakes the employee while waiting for a bus or an elevator, you simply have no strain at all to provide an accidental result of employment activity. The natural progress of the disease may bring it to its

fatal climax during working hours, but if the employee's activity at the time involves no effort, or effort which cannot support medically a casual connection, it can be rightly said that the outcome was neither accidental nor causally related to the employment. It was not accidental simply because it did happen; it happened by the inexorable march of the disease. It would have been accidental if the employee, by a miscalculation of his own strength inadvertently hastened his own death by exertion that caused the final breakdown.' "

This record is devoid of any material evidence to support the finding of the trial court that the deceased's death arose out of his employment. The inescapable legal conclusion is, as it must be, that the death of Mr. Chapman is to be regarded as caused by the inexorable march of the heart disease.

The judgment of the court below is reversed and the petition dismissed. The costs of this appeal are assessed against the appellee, Maris Chapman.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and HUMPHREYS, JUSTICES, concur.