Jim and Richard **PALMER** d/b/a Palmer Produce Company, Appellants,

v.

Ernest C. **PRUITT**, Appellee.

Supreme Court of Tennessee.

Aug. 20, 1973.

William H. Woods, Robert E. Parker, Goodpasture, Carpenter, Woods & Sasser, Nashville, for appellants.

Richard F. LaRoche, Jr., Stegall, Daniel, Burton, Bolin & LaRoche, Murfreesboro, for appellee.

## OPINION

CHATTIN, Justice.

Appellants have appealed from an adverse decree of the Chancellor awarding appellee workmen's compensation benefits for temporary total disability from October 16, 1971, until June 1, 1972, and permanent partial disability of fifty per cent to the body as a whole.

Appellants operate a wholesale produce business in Murfreesboro and deliver produce to their customers by trucks in certain Middle Tennessee towns. Trucks are loaded and dispatched over various routes in the early morning hours of the day. Drivers assist in loading the trucks and then deliver the produce to customers in various towns. Work commences at about three A.M., and a driver's work may last for sixteen hours.

The produce is in packages weighing a few pounds to one hundred ten pounds. Chickens boxed in ice weigh eighty to ninety pounds each. More produce, especially iced chickens, is loaded and delivered on Saturdays than any other day of the week. The Chancellor found the work of the drivers may be classified as "hard work."

On Saturday, October 16, 1971, Pruitt assisted in loading three trucks at the plant during the early hours of the morning. He drove the truck loaded with produce on a route for that day which included Manchester, Tullahoma, Estill Springs, Decherd and Winchester.

At approximately six A.M., Pruitt left Murfreesboro with a load of produce. He made three deliveries in Manchester. He

then drove to Estill Springs and ate breakfast about eight A.M.

From Estill Springs, he drove to Winchester and was in the act of unloading a quantity of boxes of iced chickens at a super market when he became sick at his stomach. He experienced pain in his chest. He thought it was indigestion causing the pain.

The delivery of the boxes of chicken consisted of moving the boxes to the rear of the truck, placing them on a dolly or hand truck, rolling them into the market and placing them in storage compartments.

Thereafter, he drove to Decherd and made two deliveries. He had a third delivery to be made but on arriving at the store to make the delivery he became too sick to attempt carrying the merchandise into the store. Consequently, the proprietor unloaded the produce and carried it into his store.

Pruitt testified he then intended to drive to the hospital in Winchester but blacked out a short distance from the store. He testified he did not remember anything thereafter until he awakened in the hospital the following Monday afternoon.

He testified he had previously experienced black out spells on three occasions, the last having occurred in August, 1971.

Dr. C. S. Garrison, a specialist in internal medicine, testified in behalf of appellee. He testified he had been seeing Pruitt on occasions since 1963.

Dr. Garrison saw appellee at the hospital in Murfreesboro. He studied the tests and electrocardiograms made at Winchester, as well as the tests and the electrocardiograms he made at Murfreesboro.

He testified he was of the opinion Pruitt had an acute myocardial infarction. He stated the usual cause of the myocardial infarction is insufficient blood supply to the heart; and that the usual cause of insufficient blood supply is a coronary occlusion.

Appellant insists there is no material evidence in the record to support the finding of the Chancellor of a causal connection between Pruitt's employment and his heart attack.

"The legislature in enacting the compensation act expressly entrusted the trial court with the power to find the facts and when such facts are supported by any material evidence, even if this Court thinks the evidence points otherwise, the trial court must be affirmed." General Shale Prod. Corp. v. Casey, 202 Tenn. 219, 303 S.W. 2d 736 (1957).

In the case of Hartwell Motor Co. v. Hickerson, 160 Tenn. 513, 26 S.W. 2d 153 (1930), the following was quoted with approval:

"If the findings are supported by inferences which may be fairly drawn from the evidence even though the evidence be susceptible of opposing inferences, the reviewing court will not disturb the award." Hartford Acc. and I. Co. v. Industrial Acc. Comm. of California, 202 Cal. 688, 262 P. 309, 58 A.L.R. 1392.

The Chancellor found from the testimony of Dr. Garrison, Pruitt had been suffering from arteriosclerosis. Dr. Garrison did not directly testify Pruitt had arteriosclerosis. However, the Chancellor found, and we agree, that when his testimony as a whole is considered it is such which supports a fair inference Pruitt was suffering from the disease.

Dr. Garrison testified as follows:

"Q. And in the event of a lessening of the area in the artery supplying the heart then could exertion activate a miocardial infarction?

"A. Well, if a blood vessel is narrowed it may be carrying a sufficient amount of blood to supply the heart muscle as long as the patient is inactive, but when he exerts himself this impaired circulation may then become apparent and

the patient may have pains or may even develop a miocardial infarction.

\*  \*  \*  \*  \*  \*

"Q. Lifting and loading would—how would it affect him?

"A. This man had a myocardial infarction, of course, we don't know exactly how large an area of the heart muscle is damaged, but we do know that he had an area of damage on the anterior wall of his heart as exhibited by his electrocardiogram. This area would be represented by an area of scar tissue and we would have to assume that he has had some impairment of function in his heart, and that lifting heavy cases might result in either injury to this area, or in generally weakening his heart muscle so that he would have difficulty with heart failure."

We think this case is controlled by the "accidental result" rule announced by this Court in the case of R. E. Butts Co. v. Powell, 225 Tenn. 119, 463 S.W.2d 707 (1971), wherein it is said:

"The issue upon which cases of this nature are determined is factual; that is, whether the employee experienced the disabling injury which may have accelerated an existing disease while at work on the job. If so, this Court has held in numerous cases that the injury is accidental and compensable under our Workmen's Compensation Statutes, even though the employee was not engaged in any spectacularly unusual strain or extraordinary exertion."

As stated above, Dr. Garrison's testimony shows Pruitt was suffering from arteriosclerosis at the time he experienced the myocardial infarction while at work and that his work may have caused the infarction.

■ Thus, there is material evidence to support the Chancellor's finding of a causal connection between the employment and the infarction.

Accordingly, the assignment of error is overruled.

Appellee assigns as error the action of the Chancellor in fixing appellee's disability at fifty per cent rather than one hundred per cent permanent disability to his body as a whole. This assignment is prompted by the testimony of Dr. Garrison who testified appellee had suffered a one hundred per cent disability to his body as a whole.

"Extent of disability in workmen's compensation cases is a question of fact, and if the findings of the trial judge are supported by any material evidence they are conclusive upon this court." Yates v. Superior Supply Co., 224 Tenn. 151, 451 S.W. 2d 686 (1969).

■ Pruitt testified he was only able to do light work after his heart attack. He, also, testified appellants had told him they would employ him to do lighter work at the plant. Dr. Garrison's testimony, likewise, supports the Chancellor's finding of the extent of disability.

It results the assignments of error are overruled and the decree of the Chancellor is affirmed with costs.

DYER, C. J., and HUMPHREYS, McCANLESS and FONES, JJ., concur.