**Herbert Joe HELTON,
Claimant/Appellant,**

**v.**

**STATE of Tennessee,
Defendant/Appellee.**

Supreme Court of Tennessee,
at Chattanooga.

Dec. 3, 1990.

Don W. Poole, Poole, Lawrence, Thornbury Stanley & Morgan, Chattanooga, for claimant-appellant.

Charles W. Burson, Atty. Gen. and Reporter and David T. Whitefield, Asst. Atty. Gen., Nashville, for defendant-appellee.

## OPINION

O'BRIEN, Justice.

In this appeal of a workers' compensation action from the Tennessee Claims Commission the claimant/appellant, Herbert Joe Helton, contends the Commissioner erred in denying payment of medical benefits under the Tennessee Workers' Compensation Law.

Claimant was employed as a Tennessee Highway Patrolman from 1957 to 1964. For the next four years he was employed as a criminal investigator with the District Attorney General's Office for Hamilton County. In 1968 he resumed employment with the State as a Tennessee Bureau of Investigation agent in the Department of Safety. He retired from that job in July of 1982. In December of 1977 while employed with the Tennessee Bureau of Investigation claimant developed a medical problem which later necessitated vascular surgery for a double coronary bypass. In 1981 claimant was again hospitalized for coronary insufficiency. Dr. Noel Hunt cardiologist has been his treating physician for this ailment since the first occurrence. Claimant submitted claims for medical expenses for each of these occurrences which were paid by the State of Tennessee under

the Workers' Compensation provisions and treated as workers' compensation benefits.

In 1985 claimant became employed with the City of Lakeside, a small municipality in Hamilton County, as City Manager and Chief of Police. In 1988, while acting in his official capacity, claimant began experiencing chest pains and was hospitalized. Surgery was performed to reestablish the two original bypass grafts and a third bypass on a vessel which had developed disease in the meantime. Dr. Hunt was of the opinion that all three bypasses were an extension of the same arterial disease diagnosed in 1977. He related that after the 1977 surgery one of the original bypass grafts had closed off completely and the other graft had a fifty percent (50%) closure. He further stated that the normal life of a graft would best be described as an attrition rate of 10–15% the first year and probably 5% per year thereafter. He testified that it is very common that surgery is necessary to replace an original bypass. It is common to have progression of this disease and the third bypass related to the heart disease originally diagnosed in 1977.

The Tennessee Claims Commission, in denying the claim for medical payments, relied on T.C.A. § 50–6–304 which provides that when an employee has an occupational disease, the employer and his insurance carrier, in whose employment he was last injuriously exposed to the hazards of the disease, are solely liable, without right of contribution from prior employers. The Commission added:

> T.C.A. § 7–81–201 recognizes that law enforcement work is such that the stresses of it are presumed to cause heart disease. While the exact extent of the amount of the cause of heart disease as caused by work stress is open to medical dispute, most doctors, and in fact Dr. Hunt, state that it is at least a factor. Mr. Helton was working in a law enforcement field in 1977 and in 1988, when the heart operations were required. The hazards of both employments were the same and the last risk of exposure was with the City of Lakeside.

 We are of the opinion the Commission erred in denying payment of medical benefits. The rule in a successive occupational injury context places full liability on the carrier covering the risk at the time of the most recent injury bearing a causal relation to the disability. See Larson, Workmen's Compensation Law, § 95.12. The rule operates to place liability on the last employer, if the trier of fact is convinced that the disability was caused by successive work-related injuries but is unconvinced that any one employment is the more likely cause of the disability. When a compensable injury at one employment contributes to a disability occurring during a later employment involving work conditions capable of causing the disability, but which did not contribute to the disability, the "last injurious exposure" rule does not apply, and the first employer is liable. See *Boise Cascade Corp. v. Starbuck*, 296 Or. 238, 675 P.2d 1044 (1984).

In *Liberty Mutual Insurance Co. v. Starnes*, 563 S.W.2d 178, 179 (Tenn.1978), this Court said that absent some indication of contrary intent by the Legislature, the rights of the parties under the workers' compensation statutes are determined as of the date of the accident or injury:

> In the case of a claim arising from an occupational disease, the date of the "accident or injury" is the date on which the employee becomes partially or totally incapacitated from work. T.C.A. § 50–1105. [T.C.A. § 50–6–303] [Citations omitted] By using this definition of "accident or injury" in connection with occupational diseases, the legislature has provided a certain, determinable date at which the afflicted employee's cause of action accrues, a matter of some importance in cases involving occupational diseases, where the time at which the disease is first contracted is often unknown, and the development of the disease slow ... Therefore, the applicable statute in cases involving occupational diseases is that in effect on the date on which the employee becomes disabled as a result of the disease, rather than that in effect on

the date on which he was last exposed to the agent causing the disease.

 * * * * * *

The appellant contends that the use of the date of disability rather than the date of last injurious exposure to determine an employee's rights under the Workmen's Compensation Law will unduly burden employers by making their potential liability too uncertain. We do not find this argument persuasive. While it is true that an employer's potential liability for the future disability of a former employee increases upon an increase in the benefit rates, the resulting uncertainty in the employer's potential exposure is no different from that resulting from the possibility of an increase in the benefits payable to a current employee. However, even if there were merit to this argument, it would avail the appellant nothing. The clear statement of legislative intent in T.C.A. § 50–1105 [T.C.A. § 50–6–303] that, in cases involving occupational diseases, the "accident or injury" shall be treated as having occurred on the date of disability, is determinative of the issue presented here.

■ Upon review of the evidence in this case the presumption that the claimant's heart disease arose out of and in the course of the employment where he was last injuriously exposed to the hazards of the disease is also rebutted by the medical evidence of Dr. Hunt.

Dr. Hunt was of the opinion that the claimant's 1988 surgery was the result of the heart disease diagnosed in 1977 and that there was no new "injury." Even though a bypass was performed in 1988 on a new vessel which had become diseased, Dr. Hunt was of the opinion that this was still a result of the original disease. He emphasized that the claimant's disease was progressive from the original injury. The evidence supports the fact that claimant has had difficulty since 1977.

For the reasons stated herein, the judgment of the Tennessee Claims Commission is reversed and the cause is remanded for the award of medical benefits as prescribed under the Workers' Compensation Laws.

REID, C.J., and DROWOTA, DAUGHTREY and ANDERSON, JJ., concur.