**Milton J. BACON, Plaintiff–Appellee,**

v.

**SEVIER COUNTY, Tennessee, Defendant–Appellant.**

Supreme Court of Tennessee, at Knoxville.

April 15, 1991.

Jerry H. McCarter, Gatlinburg, for plaintiff-appellee.

John W. Baker, Jr. Knoxville, for defendant-appellant.

## OPINION

DROWOTA, Justice.

In this worker's compensation action, Plaintiff–Appellee, Milton Bacon, a bailiff/process server, seeks disability benefits on the theory that job-related stress caused him to have a heart attack. The employer, Sevier County, Defendant–Appellant, has appealed from a judgment of the Circuit Court for Sevier County awarding worker's compensation disability benefits to the employee, Bacon. The employer challenges the trial court's award on the basis that in awarding benefits, the court erroneously applied a causal presumption in favor of the employee contained in T.C.A. § 7–51–201.[1] Because we find the statutory presumption inapplicable and that Plaintiff has failed to establish causation, we reverse and remand.

The record reveals that the Plaintiff, age 60 at the time of trial, began working as a bailiff/process server for the Chancery Court for Sevier County in 1976. His duties consisted primarily of maintaining a presence in the courtroom performing typical bailiff-type duties whenever the Chancery Court was in session, and serving papers when court was not in session. He was employed by the Clerk and Master and the Chancellor. When not in court, the Plaintiff would wear casual clothes and when in court, a suit and tie. He would carry a weapon at all times, although he never had an occasion to draw the weapon or actually fire at someone. He did not attend the police academy or have any formal training in connection with his job. The majority of his time was spent locating, driving to, and serving civil process. The Plaintiff described his job as being stressful and frustrating at times.

On September 26, 1986, Plaintiff left work at approximately 3 p.m. because he was feeling poorly. After arriving home, he complained to his wife about feeling as though an elephant was sitting on his chest. After dinner, he went to bed. At 4 a.m. the next morning, September 27, 1986, the Plaintiff awoke in pain. His bed was completely saturated with sweat. After having difficulty breathing at breakfast time, he was taken by his wife to a hospital in Sevier County where he came under the care and treatment of Dr. Black, a cardiologist. Earlier in the week, the Plaintiff had various difficulties serving process, claiming that he was "cussed out several times by attorneys." He also complained to the Clerk and Master earlier in the week of tightness in the chest, sweating profusely, and not feeling well generally. The Clerk and Master corroborated Plaintiff's testimony in this regard, stating that he told her on two occasions that he felt as though an elephant was sitting on his chest.

Dr. Black attended the Plaintiff in the emergency room at the Sevier County Hospital in the early morning hours of September 27, 1986. The Plaintiff gave Dr. Black no history of high blood pressure or heart disease. Dr. Black diagnosed Plaintiff's condition as a minor heart attack and discharged him on September 30, 1986, referring him to Dr. Yatteau, also a cardiologist, but with a specialization in cardiovascular

---

1. T.C.A. § 7–51–201(a)(1) provides in pertinent part: "Whenever the state of Tennessee, or any municipal corporation or other political subdivision thereof that maintains a regular law enforcement department manned by regular and full-time employees and has established or hereafter establishes any form of compensation to be paid to such law enforcement officers for any condition or impairment of health which shall result in loss of life or personal injury in the line of duty or course of employment, there shall be and there is hereby established a presumption that any impairment of health of such law enforcement officers caused by hypertension or heart disease resulting in hospitalization, medical treatment or any disability, shall be presumed (unless the contrary is shown by competent medical evidence) to have occurred or to be due to accidental injury suffered in the course of employment."

disease serving as the Director of the East Tennessee Baptist Hospital Heart Center in Knoxville. Dr. Yatteau catheterized the Plaintiff's heart, which revealed that the Plaintiff had substantial coronary artery disease, atherosclerosis, necessitating by-pass surgery. Dr. Yatteau saw and examined the Plaintiff on approximately seventeen occasions. It should be noted that the Plaintiff returned to his duties as bailiff and process server in 1987 and has been so employed full-time ever since. He testified that since the heart attack, he walks two and one-half miles every day.

Dr. Black testified that the stress associated with the Plaintiff's job was a causal factor in producing the heart attack and assessed his anatomical disability at 31 percent. Testifying to the contrary, Dr. Yatteau was adamant in his belief that the Plaintiff's job had absolutely nothing to do with the heart attack. Dr. Yatteau testified: "I don't believe his work caused or aggravated the events on the 27th of September. * * * I think that the thing that precipitated his sudden deterioration was hemorrhage … not precipitated by stress, but precipitated by the natural history of the disease. If he had retired, if he had been in Florida, if he had been in surgery, I think the same thing would have happened. I don't think that that particular event or events, if there were any in that particular time frame, caused it. I think it's just part of the natural history of the disease that with time, its going to weaken and collapse like it did." Counsel posed the following question to which Dr. Yatteau responded:

"Q. Now, this is a very important question. Dr. Yatteau, assuming that the information that I have provided to you is absolutely correct and true, do you have an opinion, based upon a reasonable degree of medical certainty, as to whether the stress this man claimed to have caused or contributed to his heart attack that he had in the morning at home on September 27th, 1986?

A. I believe that it had nothing to do with the heart attack. It didn't cause the heart attack."

The Plaintiff sought recovery for medical expenses and permanent partial disability benefits alleging that job-related stress caused the heart attack. The Defendant denied that the heart attack and heart disease and any resulting disability, was causally connected to his employment. The trial court concluded that the Plaintiff was a regular member of a law enforcement department and that he suffered a disability resulting from heart disease. The Court applied the statutory presumption found in T.C.A. § 7–51–201 and held that the heart attack was causally connected to the stress associated with his employment resulting in 31% permanent partial disability to the body as a whole. This appeal resulted.

I.

We are persuaded that the Plaintiff's case must necessarily rise or fall on the applicability of the presumption found by the trial court, contained in T.C.A. § 7–51–201. In order for the presumption to apply, it must be established that the disabled employee was employed by a regular law enforcement department manned by full-time employees and the employee suffered a disability resulting from hypertension or heart disease. See *City of Oak Ridge v. Campbell*, 511 S.W.2d 686, 688 (Tenn.1974). The version of the statute which applied at the time that the Plaintiff had his heart attack in 1986 did not define "law enforcement officer." The current version of the statute defines "law enforcement officer" as including "correctional security job classification employees of the Departments of Correction and Youth Development, and full-time county law enforcement officers including county deputy sheriffs employed in correctional security positions." T.C.A. § 7–51–201(a)(2).

We are persuaded that the Plaintiff was not a law enforcement officer employed by a regular law enforcement department manned by full-time employees. He was employed by the Clerk and Master and the Chancellor. He received his pay check from the Clerk's office and although he had authority to make arrests and carry a weapon, he was not an employee of the

Sevier County Sheriff's Department. He did not wear a uniform, had no formal police training, and dealt with people in a "non-criminal" context. Accordingly, we conclude that it was error to give the Plaintiff the benefit of the presumption. See, *Helton v. State*, 800 S.W.2d 823 (Tenn. 1990) (claimant was a city Chief of Police). Even if we were to assume that the statute applied, the presumption would have been rebutted given the fact that there are striking differences in the opinions of Dr. Black and Dr. Yatteau. See *Helton*, 800 S.W.2d at 825.

## II.

■ Having decided that it was error to have applied the statutory presumption to the facts presented in this case, we turn our attention to the ordinary standards of recovery applied in heart disease or heart attack cases. Analyzed causationally, the heart attack cases may be categorized into two primary groups: those that are precipitated by physical exertion or strain[2] and those resulting from stress, tension, or some type of emotional upheaval.[3] When the precipitating factor is physical in nature, the rule is well settled that if the physical activity or exertion or strain of the employee's work produces the heart attack, or aggravates a preexisting heart condition, the resulting death or disability is the result of an accident arising out of and in the course and scope of the employment. *Shelby Mut. Ins. Co. v. Dudley*, 574 S.W.2d 43, 44 (Tenn.1978); *Kingsport Press, Inc. v. Van Huss*, 547 S.W.2d 572, 573 (Tenn.1977); *Lawrence County Highway Department v. Hardiman*, 531 S.W.2d 792, 794 (Tenn.1975); *Coleman v. Coker*, 204 Tenn. 310, 321 S.W.2d 540, 541 (Tenn.1959). It makes no difference that the employee, prior to the attack, suffered from a preexisting heart disease, or that the attack was produced by only ordinary exertion or the usual physical strain of the employee's work. *Flowers v. South Central Bell Telephone Co.*, 672 S.W.2d 769, 770 (Tenn.1984); *Ward v. Commercial Insurance Co.*, 213 Tenn. 100, 372 S.W.2d

2. *See, e.g., Hodge v. Diamond Container General, Inc.*, 759 S.W.2d 659 (Tenn.1988) (employee working in extreme cold weather); *Banks v. St. Francis Hosp.*, 697 S.W.2d 340 (Tenn.1985) (lifting); *Flowers v. South Central Bell Telephone Co.*, 672 S.W.2d 769 (Tenn.1984) (employee lifting equipment); *Shelby Mut. Ins. Co. v. Dudley*, 574 S.W.2d 43 (Tenn.1978) (employee found dead after rearranging furniture on employer's premises); *Kingsport Press, Inc. v. Van Huss*, 547 S.W.2d 572 (Tenn.1977) (employee working with heavy equipment); *Lawrence County Highway Department v. Hardiman*, 531 S.W.2d 792 (Tenn.1975) (employee cleaning employer's equipment); *Palmer v. Pruitt*, 498 S.W.2d 89 (Tenn.1973) (employee unloading boxes); *Boles v. Aluminum Company of America*, 483 S.W.2d 582 (Tenn.1972) (employee involved in smelting operation producing aluminum); *R.E. Butts Co. v. Powell*, 463 S.W.2d 707 (Tenn.1971) (employee securing cargo to truck bed); *Coleman v. Coker*, 321 S.W.2d 540 (Tenn.1959) (employee engaged in ordinary exertion and usual strain—carpentry work); *Nashville Pure Milk Co. v. Rychen*, 322 S.W.2d 432 (Tenn.1958) (employee engaged in delivering milk); *Cunningham v. Hembree*, 195 Tenn. 107, 257 S.W.2d 12 (1953) (laboring in hot weather); *Lay v. Blue Diamond Coal Co.*, 196 Tenn. 63, 264 S.W.2d 223 (Tenn. 1953) (employee found unconscious at work site); *Milstead v. Kaylor*, 186 Tenn. 642, 212 S.W.2d 610 (1948) (lifting in extreme hot weather). In all of the foregoing cases, recovery was permitted. For cases denying recovery, see *Collins v. Liberty Mut. Ins.*, 561 S.W.2d 456 (Tenn.

1978); *Tibbals Flooring Co. v. Stanfill*, 219 Tenn. 498, 410 S.W.2d 892 (1967); *Hagewood v. E.I. DuPont De Nemours & Co.*, 206 Tenn. 239, 332 S.W.2d 660 (1960).

3. *See, e.g., Sexton v. Scott County*, 785 S.W.2d 814 (Tenn.1990) (general stress and anxiety associated with employment); *Helton v. Food Lion, Inc.*, 738 S.W.2d 626 (Tenn.1987) (abrasive confrontation between employer and employee); *Black v. State*, 721 S.W.2d 801 (Tenn.1986) (heated exchange with employer); *Cabe v. Union Carbide Corp.*, 644 S.W.2d 397 (Tenn.1983) (heated argument with co-worker); *Allied Chemical Corp. v. Wells*, 578 S.W.2d 369 (Tenn. 1979) (worry and anxiety and emotional stress of a general nature over job responsibilities); *Chapman v. Aetna Casualty & Sur. Co.*, 221 Tenn. 376, 426 S.W.2d 760 (1968) (upsetting news of termination); *Travelers Ins. v. Googe*, 217 Tenn. 272, 397 S.W.2d 368 (1965) (general stress and anxiety associated with employment); *Ward v. Commercial Insurance Co.*, 213 Tenn. 100, 372 S.W.2d 292 (1963) (long hours and worry over sales commissions). Of these decisions, only two, *Black* and *Cabe*, allowed recovery. Recovery has also been denied in at least three cases involving psychiatric illness resulting from work related stress. *Henley v. Roadway Express*, 699 S.W.2d 150 (Tenn.1985); *Clevenger v. Plexco*, 614 S.W.2d 356 (Tenn.1981); *Jose v. Equifax, Inc.*, 556 S.W.2d 82 (Tenn.1977).

292, 296 (1963). In other words, no extraordinary exertion or unusual physical strain need be established in order to obtain a recovery. *R.E. Butts Co. v. Powell,* 225 Tenn. 119, 463 S.W.2d 707, 709 (Tenn. 1971); *Coleman,* 204 Tenn. 310, 321 S.W.2d at 541; *Nashville Pure Milk Co. v. Rychen,* 204 Tenn. 575, 322 S.W.2d 432, 434–35 (Tenn.1958). The causational key to recovery or denial of benefits turns on whether the disabling heart attack is precipitated by the physical activity or exertion or physical strain of the employee's job. *Shelby,* 574 S.W.2d at 44; *Kingsport Press,* 547 S.W.2d at 573; *Lawrence County,* 531 S.W.2d at 794; *R.E. Butts,* 225 Tenn. 119, 463 S.W.2d at 709. In those instances where physical exertion is thought to have precipitated the attack, there is invariably medical proof of some specific act, incident, or event that either did, could have, or might have set off the attack.

Aside from the decisional body of law summarized above dealing with physical exertion or strain producing the heart attack, there is the other line of cases that grapple with the situation involving heart attacks which are precipitated by emotional stress, worry, or tension, without any physical exertion or strain. The first in this line of cases is *Travelers Insurance Company Ins. Co. v. Googe,* 217 Tenn. 272, 397 S.W.2d 368 (1965), where recovery was sought on behalf of a union employee who died from a heart attack, specifically coronary artery disease. The medical proof was that the stress of the employment could or might have precipitated the fatal heart attack. This Court denied recovery, holding that there was no proof of an accident or injury linking the employment activities to the heart attack. "Where the heart attack is not brought on by the work which the employee was doing, or by some external happening in the course of the employment, it does not fall within the category of injury by accident arising out of employment." *Travelers,* 397 S.W.2d at 371–72 (citations omitted). The Court stated:

"There must still be an unexpected result, and there must still be an exertion—some exertion—capable medically of causing the collapse. This can by no means be taken for granted. If heart failure overtakes the employee while waiting for a bus or an elevator, you simply have no strain at all to provide an accidental result of employment activity. The natural progress of the disease may bring it to its fatal climax during working hours, but if the employee's activities at the time involves no effort, or effort which cannot support a causal connection, it can be rightly said that the outcome was neither accidental nor causally related to the employment. It was not accidental simply because it did happen; it happened by the inexorable march of the disease. It would have been accidental if the employee, by a miscalculation of his own strength inadvertently hastened his own death by exertion that caused the final breakdown."

*Travelers,* 397 S.W.2d at 371 (quoting 1B Larson's Workmen's Compensation Law, § 38.83(h)).

The next "stress case," *Chapman v. Aetna Casualty & Surety Co.,* 221 Tenn. 376, 426 S.W.2d 760 (1968), involved an employee with a pre-existing heart problem who had been informed that he was going to be terminated the next day due to a slow down in the work load required to be performed by his employer. He died the next day of a heart attack. In denying recovery, we stated that with respect to causation, the medical proof was little more than a statement in the abstract that work and worry may have aggravated his pre-existing heart condition. There was no connection between the work and the heart attack, the cause of death being the natural progression of the disease and the proof failed to establish the occurrence of some event related to his employment activities that precipitated the attack. Even though the trial judge placed great emphasis on the stress and strain resulting from the notification of termination, this Court stated that "[i]f stress occurred which can be said to have aggravated the decedent's highly dangerous heart condition, this is precisely the same stress that the employee

would encounter by reason of any lack of gainful work, whether before obtaining such or upon the termination of any particular period of work." *Chapman*, 426 S.W.2d at 762. Accordingly, the Court held that the heart attack did not arise out of the employment.

In *Allied Chemical Corp. v. Wells*, 578 S.W.2d 369, 372 (Tenn.1979), the plaintiff, a factory foreman, claimed that worry, anxiety, and emotional stress of a general nature over his job responsibilities led to his heart attack. The claimant was not able to point to any unusual or sudden stressful, shocking or frightening event leading to his heart attack; therefore, this Court denied recovery, holding that worry, anxiety, or emotional stress of a general nature are not, by themselves, sufficient to establish an "accident" for purposes of worker's compensation. The Court stated:

"[M]ental and emotional strain, worry and anxiety—even of a chronic, rather than an acute, variety—can contribute to the onset of a [heart attack], we are of the opinion that to permit coverage on the facts shown in the present record would expand the statutory criterion of "injury by accident" beyond reasonable limits. The medical testimony is clear that any number of factors can trigger or precipitate a [heart attack] when coronary arteries are narrowed to the critical point by pre-existing atherosclerotic disease. We are of the opinion that absent either physical exertion or some acute, sudden or unexpected emotional stress directly attributable to employment, an industrial accident should not be deemed to have occurred, even though worry, anxiety or emotional stress of a general nature may have proceeded the onset of the [heart attack].

\*　\*　\*　\*　\*　\*

It is indeed difficult to formulate a general rule that would be applicable to all cases. [T]here are obviously limits to any realistic application of the criterion of "injury by accident." Emotional stress, to some degree, accompanies the performance of any contract of employment. When this is within the normal bounds of the ups and downs of emotional normal human experience, courts frequently decline to impose liability...." *Allied Chemical*, 578 S.W.2d at 372.

The Court again denied benefits in *Clevenger v. Plexco*, 614 S.W.2d 356 (Tenn. 1981). In *Clevenger*, the plaintiff, unlike the plaintiff in *Allied Chemical*, pointed to a specific incident in which he identified as the precipitating cause of a serious nervous breakdown. The plaintiff was reprimanded for his work performance in the presence of other employees and was told that improvement in his performance needed to occur within a couple of weeks or risk being fired. With regard to this evidence, we pointed out that even if the plaintiff's version of this incident was correct, it could not qualify as the kind of mental stimulus, fright or shock, characterizing "injuries by accident." *Clevenger*, 614 S.W.2d at 360. The event fell within the observation that any stress or strain of daily living or every undesirable experience encountered in carrying out the duties of a contract of employment is not embraced by the Worker's Compensation Statute. Simply put, the Plaintiff failed to establish a causal connection between the alleged precipitating event and the breakdown itself given existing mental and physical problems.

However, in *Cabe v. Union Carbide Corporation*, 644 S.W.2d 397 (Tenn.1983), this Court found that the plaintiff's heart attack was compensable. The plaintiff's fatal heart attack occurred only minutes after a heated and upsetting argument with a subordinate employee in an attempt by the plaintiff to enforce plant safety rules. Recovery was permitted because the claimant was able to establish with specificity and clarity, the occasion which constituted the "accident" and because the argument resulted in unexpected emotional stress directly attributable to the employment. This was unlike the situation in *Allied Chemical* where the employee was denied recovery because of his broad assertion of stress of a general nature. The same result occurred in *Black v. State*, 721 S.W.2d 801 (Tenn.1986) where we again awarded benefits in a situation where the heart at-

tack occurred almost immediately after the plaintiff had engaged in a very heated argument with his superior. However, recovery was denied in *Helton v. Food Lion, Inc.*, 738 S.W.2d 626 (Tenn.1987), where the employee had the heart attack four days after an abrasive confrontation with his supervisor. The Court in *Helton* held that the confrontation was not the acute, sudden, or unexpected emotional distress directly attributable to the employment sufficient to constitute a compensable accident. *Helton*, 738 S.W.2d at 629.

The most recent in the line of cases dealing with heart attacks precipitated by emotional stress or tension is *Sexton v. Scott County*, 785 S.W.2d 814 (Tenn.1990). In *Sexton*, we reversed the trial court's award of benefits to the claimant, a bailiff and process server with coronary artery disease. The plaintiff testified that he worked long hours and had considerable stress in his job. He testified that when he was hired, he was told that his hours would be eight hours a day, five days a week, but that his actual hours were much longer. He also testified that his duties as process server required him to serve papers early in the morning and late in the evening or on weekends. The medical testimony for the plaintiff was that the heart problems were aggravated by the stress of his job. The medical proof presented by the defendant was that stress, as it related to the plaintiff's employment, did not contribute to the development of coronary artery disease or the heart attack itself. After reviewing the decisions discussed previously, specifically *Helton, Black, Cabe,* and *Allied Chemical,* this Court held that the plaintiff failed to point to any particular sudden, stressful, shocking or frightening event leading to an aggravation of his heart problem. "Rather, plaintiff claims that long hours and work stress of a general nature exasperated his heart condition. Plaintiff has failed to show that he suffered a compensable 'accident' within the meaning of the worker's compensation laws." *Sexton*, 785 S.W.2d at 816–17. Accordingly, benefits were denied.

Viewing all of the foregoing cases as a whole, it is obvious that in order to recover when there is no physical exertion, but there is emotional stress, worry, shock, or tension, the heart attack must be immediately precipitated by a specific acute or sudden stressful event, rather than generalized employment conditions. *Sexton*, 785 S.W.2d at 816–17; *Helton*, 738 S.W.2d at 628–29; *Black*, 721 S.W.2d at 802–03; *Cabe*, 644 S.W.2d at 398–99; *Allied Chemical*, 578 S.W.2d at 372. We reiterate the rule again in this case that if the cause or stimulus of the heart attack is mental or emotional in nature, such as stress, fright, tension, shock, anxiety, or worry, there must be a specific, climatic event or series of incidents of an unusual or abnormal nature if the claimant is to be permitted a recovery. A premium should be placed upon specificity and clarity in identifying that which constitutes the "accident" and upon demonstrating that such accident is directly attributable to the employment.

### III.

Returning now to the facts of this case, the question becomes whether under our de novo standard of review the Plaintiff's heart attack was precipitated by some acute, sudden, or unexpected emotional distress directly attributable to his employment. In this regard, we note that we are not bound by the findings of the trial court and must determine where the preponderance of the evidence lies. *Corcoran v. Foster Auto GMC, Inc.*, 746 S.W.2d 452, 456 (Tenn.1988). The Plaintiff in this case has the burden of proving causation by a preponderance of the evidence just like every other element of his case. *Talley v. Virginia Insurance Reciprocal*, 775 S.W.2d 587, 591 (Tenn.1989). Except in the most obvious, simple and routine cases, the claimant in a worker's compensation action must establish by expert medical evidence the causal relationship between the claimed injuries and the employment activity. *Orman v. Williams–Sonoma, Inc.*, 803 S.W.2d 672 (Tenn.1991); *Masters v. Industrial Garments Mfg. Co.*, 595 S.W.2d 811, 812 (Tenn.1980). The same holds true in cases involving heart attacks. *See e.g.,*

*Ward v. Commercial Insurance Co.,* 213 Tenn. 100, 372 S.W.2d 292 (1963).

Our review of the record, particularly the testimony of the Plaintiff and that of Dr. Black and Dr. Yatteau, persuades us that the claimant has failed to establish causation. Specifically, he has not proven by a preponderance of the evidence that his heart attack was precipitated either by physical strain, exertion or trauma connected with his employment, or was produced by some acute, sudden, and unexpected emotional distress directly attributable to the employment. Although there is some suggestion in the record that the Plaintiff had trouble serving an individual that resulted in a "little wrestling match," this took place eight days prior to the time the Plaintiff went to the emergency room to seek medical aid for a heart attack.[4] Furthermore, the complaints of the Plaintiff regarding stress are similar to those made by the bailiff-process server in *Sexton,* i.e., long hours and general stress, tension, and anxiety. Neither the Plaintiff or Dr. Black identified any specific traumatic event or series of incidents of an unusual or abnormal nature that led to the attack. The Plaintiff makes no reference in his complaint to any specific physical exertion or stressful event precipitating the attack. In opposing a motion for summary judgment, he cites stress and pressure of a general nature, but, again, nothing specific. It should be noted that Dr. Black was of the opinion that in addition to stress, the fact that the Plaintiff smoked contributed to the heart attack. Dr. Yatteau, as pointed out previously, was unequivocal in his belief that the Plaintiff's work conditions had absolutely nothing to do causally with the attack. Moreover, the Plaintiff's testimony reveals that he had good days and bad days with respect to his employment depending upon how diligently he had to work to locate individuals to be served. Normal ups and downs are part of any employment relationship and, as we have said on many previous occasions, do not justify finding an "accidental injury" for purposes of worker's compensation law. *Sexton,* 785 S.W.2d at 817; *Helton,* 738 S.W.2d at 628–29. As we have already observed in previous cases, every stress and strain of daily living or every undesirable encountered experience in carrying out the duties of an employment relationship is not embraced by the worker's compensation scheme. *Allied Chemical,* 578 S.W.2d at 372.

We hold that the Plaintiff is not entitled to worker's compensation benefits. The judgment of the trial court is reversed and the case remanded for any further action that may be necessary. Costs are adjudged against Plaintiff.

O'BRIEN, DAUGHTREY and ANDERSON, JJ. and TIPTON, Special Justice, concur.

---

**4.** In *Helton,* the abrasive confrontation between the employer and the employee occurred four days prior to the heart attack and we denied recovery.