

**FILED**
**Aug 07, 2018**
**12:30 PM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD
### (HEARD JULY 10, 2018 AT NASHVILLE)[1]

| | | |
|---|---|---|
| Mattie Mitchell | ) | Docket No.  2016-08-1131 |
| as representative for the Estate of | ) | |
| Michael Mitchell | ) | State File No.  92588-2015 |
| | ) | |
| v. | ) | |
| | ) | |
| Bunge North America, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Deana C. Seymour, Judge | ) | |

---

### Affirmed and Remanded - Filed August 7, 2018

---

This is the second interlocutory appeal of this case, which involves a claim for death benefits brought by a surviving spouse following her husband's heart attack and subsequent death.  The surviving spouse asserted the employee's death arose primarily out of his employment and offered multiple theories to support her claim.  The first appeal followed the trial court's denial of the employer's motion for summary judgment, wherein the court concluded there were genuine issues of material fact "regarding each theory raised by [the surviving spouse]."  We vacated the trial court's order and remanded the case because the trial court did not sufficiently state the grounds for its decision to deny the motion as contemplated by Rule 56.04 of the Tennessee Rules of Civil Procedure.  The trial court subsequently issued an amended order denying the employer's motion for summary judgment, and the employer has again appealed the trial court's denial of its motion.  We affirm the trial court's decision and remand the case, concluding there are material factual disputes as to whether the decedent's heart attack and death arose primarily out of the employment.

Judge David F. Hensley delivered the opinion of the Appeals Board in which Presiding Judge Marshall L. Davidson, III, and Judge Timothy W. Conner joined.

---

[1] We wish to extend our appreciation to the Nashville School of Law for allowing us the use of its facilities for oral argument in this case.

S. Newton Anderson, Memphis, Tennessee, for the employer-appellant, Bunge North America

Julian T. Bolton, Memphis, Tennessee, for the employee-appellee, Mattie Mitchell, as representative for the Estate of Michael Mitchell

**Factual and Procedural Background**

The facts underlying this claim for death benefits remain as they were presented to us in the first appeal.[2]

> Michael Earl Mitchell ("Employee") worked for thirty-four years at Bunge North America ("Employer"), an agricultural business. He spent approximately ten years prior to his death working as a superintendent. During harvest season, Employee was required to work longer hours, sometimes twelve hours a day, seven days a week. On November 1, 2015, while at work in the "scale office," Employee suffered a fatal heart attack. The parties dispute the extent, duration, and intensity of Employee's physical activities on the day of his heart attack. Employer maintained that Employee did not engage in any strenuous activity on the day of the heart attack, but had "an easy laid back day." The surviving spouse responded that Employee was "the only superintendent on site" that day and he had been "all over the place that day." She further alleged that Employee was "really stressed out" about a computer program he was having difficulty learning.

> Following Employee's death, the surviving spouse requested a private autopsy to verify the cause of death. The autopsy findings of Dr. Thomas Deering indicated Employee had suffered from "extensive cardiac disease with prior stent placement," as well as "hypertension and a remote muscle injury of the thigh." Dr. Deering also found evidence of aortic atherosclerosis and "pulmonary edema of the lungs," which he associated with the heart disease. Employee also suffered from mild pulmonary emphysema. The autopsy did not reveal a work-related lung disease. Dr. Deering concluded that "the cause of death is atherosclerotic and hypertensive cardiovascular disease." He further noted that "[c]ontributing to the death is pulmonary emphysema" and that "the manner of death is natural."

---

[2] *Mitchell v. Bunge North America*, No. 2016-08-1131, 2018 TN Wrk. Comp. App. Bd. LEXIS 3 (Tenn. Workers' Comp. App. Bd. Feb. 7, 2018).

Employee also obtained expert medical opinions from two board-certified cardiologists, Dr. Joseph Weinstein and Dr. Jesse McGhee. Dr. Weinstein, Employee's treating cardiologist prior to his death, performed a records review. In his June 14, 2017 report, Dr. Weinstein noted "increased workload" and "stress in the workplace," and he concluded that "because his death occurred at work, his myocardial infarction and subsequent death were work related." In his subsequent deposition, Dr. Weinstein opined that stress "increases your blood pressure" and "can lead to something called plaque rupture, which we feel in the majority of instances is how a heart attack occurs."

On cross-examination, Dr. Weinstein admitted that Employee suffered from a number of pre-existing medical conditions unrelated to his work, including obesity, a history of tobacco use, coronary atherosclerosis, left ventricular dysfunction, and hyperlipidemia. When asked about work-related stressors, Dr. Weinstein testified that he would describe those as "contributing" but not necessarily "precipitating" causes of Employee's heart attack. Finally, Dr. Weinstein admitted he was unaware of any "acute sudden or unexpected event" on the day of the heart attack.

Employee then submitted the expert medical opinion of Dr. McGee, who also performed a records review. In his November 8, 2016 report, Dr. McGee described Employee's physical stress and environmental conditions at work as "a primary contributor" to his death. In his deposition, Dr. McGee noted that Employee suffered from "physical and emotional stress on his job." He also opined that this work-related stress was a "significant contributing factor" to the heart attack. He testified that "[s]omething happened that stressed him out, and when you become stressed, your heart rate and your blood pressure can go up and that certainly can contribute to a plaque rupture." This led to his conclusion that "[Employee's] physical, environmental, and emotional stress related to his employment over time contributed [to] and aggravated his coronary atherosclerotic heart disease."

On cross-examination, Dr. McGee admitted it was not possible to tell from the autopsy findings whether Employee's heart attack was caused by acute or chronic factors. He further admitted he was unaware of any specific acute event that occurred on the day of Employee's death. Finally, he agreed that when he described in his report Employee's physical stress and environmental conditions at work as "a primary contributor" to his death, he was referring to "long term exposure . . . over years" to such conditions, and not any acute event.

3

Employer filed a motion for summary judgment and relied, in part, on the expert medical opinion of Dr. Keith Anderson. In Dr. Anderson's May 8, 2017 report, he concluded that "exposure to grain dust" and "emotional stress" at work "did not contribute to the development of atherosclerotic heart disease or the progression of this disease." He further opined that "there is no relationship between grain dust exposure or between chronic work stress and his myocardial infarction." Because there was "no identifiable activity preceding this event which could be identified as a trigger for his myocardial infarction," Dr. Anderson concluded that "[t]o a reasonable degree of medical certainty, [Employee's] employment had no causal relationship to his death."

*Mitchell*, 2018 TN Wrk. Comp. App. Bd. LEXIS 3, at *5-6 (footnote omitted).

In the first interlocutory appeal, we vacated the trial court's order and remanded the case for additional findings consistent with the requirements of Rule 56 of the Tennessee Rules of Civil Procedure. On remand, the trial court considered no further proof before issuing an amended order denying Employer's motion for summary judgment. In the amended order, the trial court identified specific factual disputes between the parties concerning each of the three theories of recovery advanced by the surviving spouse as having caused the decedent's heart attack and resulting death: (1) physical exertion; (2) mental stress; and (3) inhalation of grain dust.

Addressing the allegation that the decedent's work-related physical exertion caused his heart attack, the trial court concluded that "[i]ssues of material fact abound about [the] allegations regarding physical exertion." The trial court reasoned that the parties "dispute the extent, duration, and intensity of [decedent's] activities on the days leading up to his heart attack," and that the evaluating physicians disagreed "regarding the impact of [decedent's] work-related activity."

Similarly, the trial court determined that "the physicians' divergent causation opinions [addressing decedent's work-related mental stress] reveal additional disputed issues." Finally, the court observed that "[t]he doctors also disagree when it comes to the inhalation of grain dust," noting that Dr. McGee "indicated that environmental factors such as grain dust exposure contributed to and aggravated [decedent's] heart disease."

The trial court accordingly denied Employer's motion for summary judgment, stating it "finds genuine issues of material fact based on the conflicting opinions of the evaluating physicians as to the cause of [decedent's] heart attack." Employer has again appealed the denial of its motion.

4

## Standard of Review

The granting or denial of a motion for summary judgment is an issue of law and, therefore, our standard of review is *de novo* with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *McBee v. CSX Transp., Inc.*, No. W2015-01253-COA-R3-CV, 2017 Tenn. App. LEXIS 129, *14 (Tenn. Ct. App. Feb. 24, 2017). As such, we must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250. In addition, we "must view the evidence in the light most favorable to the non-moving party and must also draw all reasonable inferences in favor of the non-moving party." *Dugger v. Home Health Care of Middle Tenn.*, No. M2016-01284-SC-R3-WC, 2017 Tenn. LEXIS 206, at *8 (Tenn. Workers' Comp. Panel Jan. 31, 2017).

## Analysis

Summary judgment can be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. Where, as here, the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production "either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d 235, 264. *See also* Tenn. Code Ann. § 20-16-101 (2017). If Employer's initial burden of production is not met, then the surviving spouse's burden is not triggered, and the court should deny the motion for summary judgment. *See Town of Crossville Hous. Auth. v. Murphy*, 465 S.W.3d 574, 578-79 (Tenn. Ct. App. 2014). However, if Employer's motion for summary judgment is properly supported, the surviving spouse must "by affidavits or one of the other means provided in Rule 56, 'set forth specific facts' *at the summary judgment stage* 'showing that there is a genuine issue for trial.'" *Rye*, 477 S.W.3d at 265 (quoting Tenn. R. Civ. P. 56.06).

"Injury" and "personal injury" are defined in the Workers' Compensation Act to mean "an injury by accident, a mental injury, occupational disease *including diseases of the heart*, lung and hypertension, . . . arising primarily out of and in the course and scope of employment, that causes death, disablement, or the need for medical treatment of the employee." Tenn. Code Ann. § 50-6-102(14) (2017) (emphasis added). An injury arises primarily out of and in the course and scope of employment "only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(14)(B). Further, "[a]n injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it

5

contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C). "'Shown to a reasonable degree of medical certainty' means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D).

In the present case, there is no dispute that decedent's heart attack occurred in the course of his employment. The disputes here concern causation and whether the proof addressing causation presents a genuine issue for trial as to whether decedent's heart attack and death arose primarily out of the employment.

Employer's assertion that the trial court erred in denying its motion for summary judgment is two-pronged. First, it asserts it negated an essential element of the surviving spouse's claim through the testimony of Dr. Anderson by establishing decedent's heart attack did not "arise primarily" out of the employment "considering all causes," as required by Tennessee Code Annotated section 50-6-102(14). Employer further separates its initial argument into two parts, asserting the surviving spouse "is unable to identify a triggering event of physical exertion" and "is unable to identify a specific acute or sudden stressful event" as required for a compensable heart attack. Employer's second prong of attack focuses on causation, but addresses only the surviving spouse's theory that decedent's pulmonary condition caused his heart attack.

For the reasons that follow, we conclude that while Employer's motion for summary judgment included evidence that, standing alone, could negate an essential element of the surviving spouse's claim through Dr. Anderson's testimony, the record also includes evidence that the physical stress and the environmental conditions of decedent's employment significantly contributed to and aggravated his heart disease and "was a primary contributor to his death." Our role at the summary judgment stage is not to weigh the medical proof in the first instance or to determine that one expert's opinions are more credible than another expert's opinions; rather, we must view the evidence in the light most favorable to the non-moving party, draw all reasonable inferences in favor of the non-moving party, and determine whether the moving party is entitled to judgment as a matter of law in accordance with Rule 56 of the Tennessee Rules of Civil Procedure.

Employer asserts that, to be compensable, a heart attack "must fall into one of two separate categories" as identified in *Bacon v. Sevier County*, 808 S.W.2d 46 (Tenn. 1991). Relying on *Bacon*, Employer describes compensable heart attacks as those "precipitated by physical exertion or strain," and those resulting from "stress, tension, or some type of emotional upheaval." Employer asserts it established that decedent's heart attack was not precipitated by physical exertion or strain and did not result from any type of emotional upheaval, thereby negating the surviving spouse's allegation that decedent's heart attack "arose primarily out of the employment" when "considering all causes."

6

As noted in *Bacon*, the Tennessee Supreme Court has categorized compensable heart attack cases into two groups as described above. The Court in *Bacon* explained that, "[w]hen the precipitating factor is physical in nature, the rule is well settled that if the physical activity or exertion or strain of the employee's work produces the heart attack, or aggravates a preexisting heart condition, the resulting death or disability is the result of an accident arising out of and in the course and scope of the employment." *Id.* at 49. However, the 2013 Workers' Compensation Reform Act changed the definition of "injury" and "personal injury" from that applicable when *Bacon* was decided. As previously noted, under the 2013 Reform Act, an injury by accident must "arise *primarily* out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14) (emphasis added). Before the effective date of the 2013 Reform Act, it made no difference that the employee, prior to the heart attack, suffered from pre-existing heart disease, as the key to recovery or denial of benefits was whether the employee's heart attack was precipitated by the physical activity or exertion or physical strain of his job. *See Bacon*, 808 S.W.2d at 49-50. By contrast, the 2013 Reform Act states that "injury" and "personal injury" "shall not include the aggravation of a preexisting disease, condition or ailment unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14)(A).

As stated in *Bacon*, "[i]n those instances where physical exertion is thought to have precipitated the attack, there is invariably medical proof of some specific act, incident, or event that either did, could have, or might have set off the attack." *Id.* at 50. In this case, Employer contends there was no proof that decedent "was doing any sort of physical activity at the time of the heart attack, or even the day of, that provides the required precipitating nexus."

The trial court found the parties disputed "the extent, duration, and intensity" of decedent's activities "on the days leading up to the heart attack." Stating that decedent's co-workers did not recall decedent performing strenuous work on the day of his heart attack, the court noted that one witness "remembered [decedent] engaging in strenuous labor in the days before that caused him to sweat, cough, and to have difficulty breathing." The trial court additionally observed that the testimony suggested decedent "was working between ten and fourteen hours per day, seven days per week at the time of his heart attack." Viewing this testimony in the light most favorable to the surviving spouse, we cannot say that the facts concerning the nature of the physical exertion or strain in which decedent engaged prior to his heart attack is undisputed. However, that does not end the analysis, as it remained the surviving spouse's burden to show there is sufficient evidence of causation, the essential element of her claim negated by Dr. Anderson's testimony, to create a genuine issue of material fact.

Both Dr. Weinstein and Dr. McGee acknowledged that decedent had pre-existing heart disease, and both related decedent's heart attack to his work. Dr. Weinstein testified

7

that, "[b]ased on the evidence of increased workload, stress in the workplace, and because his death occurred at work, [he] felt that [decedent's] abnormal heart rhythm or arrhythmia was work-related and more likely than not it was due to myocardial ischemia or the heart not getting enough blood supply." Similarly, he also testified that "as there was evidence of increased workload, stress in the workplace, and because his death occurred at work, [he] felt more likely than not [decedent's] myocardial infarction and subsequent death were work-related." Although Dr. Weinstein's testimony established that decedent's heart attack was work-related, that testimony alone does not satisfy the statutory requirements of section 50-6-102(14).

Dr. McGee's report and testimony went beyond stating that decedent's heart attack was work-related. He testified decedent had both physical and emotional stress on his job as well as exposure to grain dust. He testified "[a]ll of those things I believe contribute to the worsening or contribut[e] to that plaque that was there and the stress related to that resulted in rupture of that plaque." He admitted there were other contributing factors, including decedent's diabetes, obesity, hyperlipidemia, and past tobacco smoking, but he agreed in his deposition that "the physical strain or the physical exertion of working the hours and the times and the type of work he did was a significant contributing factor." Moreover, in his November 8, 2016 report he stated, "[i]t is my opinion that the physical stress as well as the environmental conditions such as grain dust inhalation over time significantly contributed to and aggravated his coronary atherosclerotic heart disease, and as a result was a *primary* contributor to his death." (Emphasis added.) While neither the trial court nor we are called upon to assess the credibility of the experts' opinions or to weigh them against each other at the summary judgment stage, we must make a determination of whether there are disputed issues of fact concerning causation that would warrant a trial.

As noted by the trial court, Dr. Anderson and Dr. McGee disagreed as to the impact of decedent's work-related activity and his exposure to grain dust, and Dr. McGee expressed the opinion that decedent's physical stress, as well as the environmental conditions of his work, "significantly contributed to and aggravated" his condition and were "a primary contributor to his death." Viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in favor of the non-moving party as we are required to do, *see Dugger*, 2017 Tenn. LEXIS 206, at *8, we hold that the evidence presents a genuine issue for trial such that Employer is not entitled to judgment as a matter of law.

## Conclusion

For the foregoing reasons, we find there are genuine issues of material fact as to the cause of Employee's heart attack and death. Accordingly, we affirm the trial court's denial of Employer's motion for summary judgment and remand the case.

8

**FILED**
**Aug 07, 2018**
**12:30 PM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Mattie Mitchell | ) | Docket No. 2016-08-1131 |
| as representative for the Estate of | ) | |
| Michael Mitchell | ) | State File No. 92588-2015 |
| | ) | |
| v. | ) | |
| | ) | |
| Bunge North America, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Deana C. Seymour, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 7th day of August, 2018.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Sent to: |
|---|---|---|---|---|---|---|
| Julian T. Bolton | | | | | X | bolllaw@aol.com |
| S. Newton Anderson | | | | | X | sna@spicerfirm.com |
| Deana C. Seymour, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov