IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 12, 2004 Session

# LINDA F. CLARK, et al. v. NASHVILLE MACHINE ELEVATOR COMPANY INCORPORATED

**Direct Appeal from the Chancery Court of Williamson County**
**No. 28984,  Donald P. Harris, Chancellor**

---

**M2003-01568-SC-R3-CV - Filed March 10, 2004**

---

In this workers' compensation case,  the employer, Nashville Machine Elevator Co., Inc., has appealed the trial court's award of death benefits to the widow and son of the employee, Eddie W. Clark, Jr., who suffered a fatal heart attack while driving  the employer's vehicle home from work. The employer contends generally that the evidence preponderates against the trial court's finding that the employee suffered an injury causally related to his employment activities, and specifically argues that the heart attack was not compensable because the employee was not physically exerting himself when he suffered the heart attack.  The appeal was argued before the Special Workers' Compensation Appeals Panel pursuant to Tennessee Code Annotated section 50-6-225(e)(3), but the appeal was transferred to the full Supreme Court prior to the Panel issuing its decision.  The question before this Court is whether the evidence preponderates against the trial court's finding that the employee's heart attack arose out of his employment.  After carefully examining the record and the relevant authorities, we find no error and affirm the judgment of the trial court.  We further hold that physical exertion or strain is not required at the instant an employee's heart attack occurs, provided there is evidence linking the physical activities of the employment with the heart attack.

**Tenn. Code Ann. § 50-6-225(e)(3); Judgment of the Chancery Court Affirmed**

FRANK F. DROWOTA, III, C. J., delivered the opinion of the court, in which E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Branch H. Henard, III, and Mark A. Baugh, Nashville, Tennessee, for the appellant, Nashville Machine Elevator Company, Incorporated.

Donald S. Caulkins, Franklin, Tennessee, for the appellees, Linda F. Clark and Brandon W. Clark.

# OPINION

**Factual and Procedural Background**

The employee, Eddie W. Clark, Jr., age 41, was employed by Nashville Machine Elevator Company, Incorporated as an elevator mechanic. He worked for the employer for approximately eight years before his death from complications stemming from a heart attack suffered on March 7, 2002, while driving home from work in the employer's van.

The employee's typical work routine was to leave his house in Fairview at 6:30 a.m. and drive a company van to Brentwood where he would begin his assigned route servicing and repairing elevators. He would normally return home by 5:30 p.m., although he often worked more than forty hours a week and was frequently on call. If he received a call after returning home on days that he was on call, he would leave his house and return to work to perform the necessary service or repair.

On March 6, 2002, the day before the employee suffered his heart attack, he told his wife before leaving for work that he was short of breath and that he was tired, aching, and thought that he might be coming down with the flu. Two or three weeks previously he had difficulty breathing while at work. According to the employee's wife, the employee enjoyed his job and was not the type of person to complain about being sick. He would go to work even if he was not feeling well, as was the case on March 6, 2002. He arrived home at 4:15 p.m. that afternoon. However, he was on call that night, and was home little more than one hour before being called out to work again. He arrived home at about 2:00 a.m. on March 7, 2002, got back up at 5:00 a.m., and returned to work for another full shift. While driving home that afternoon in a company van, the employee had a heart attack and veered off the road. He was taken to a hospital where he died several days later. He had serviced or repaired twenty-two elevators on March 6 and 7, 2002.

The employee's duties as an elevator mechanic required him to, among other things, climb stairs, get on top of elevator cars, inspect hydraulic, electrical, and mechanical systems, lubricate belts and chains, and check the condition of elevator shafts by climbing in and out of them using a ladder. The employee's wife described her husband's job as "heavy labor." She testified that he always carried his toolbox from his assigned van to the job site where he needed his tools. The employee's wife went to work with him on approximately fifty occasions, although she was not with him on March 7, 2002. She testified that because he worked so much she would accompany him while he was on call so that they could spend time together.

The employee's teenage son, Brandon Clark, who sometimes accompanied his father to work, likewise testified that the employee would carry his toolbox from his van to the place where he was working. The son testified that his father's toolbox weighed approximately twenty-eight pounds, as he had weighed it himself on three occasions. He saw his father carry the toolbox up the stairs of buildings many times in order to perform his job. He further testified that his father would sometimes "have to hurry up and run" because people were stuck on an elevator that had malfunctioned.

A co-worker of the employee similarly testified that the employee typically carried his toolbox from his van to where he needed his tools. Another individual, the employee's supervisor, testified that he did not know whether the employee carried his toolbox with him whenever he went into a building to service or repair an elevator. The supervisor had no evidence to refute the testimony of the employee's wife, son, and co-worker, that he did so. The supervisor acknowledged that if he had to make a repair, he was "pretty sure I'd carry my toolbox in." The supervisor further testified that being an elevator mechanic was sometimes stressful work, but that it usually did not involve heavy labor. The supervisor had not worked on an elevator in eight years.

The only medical proof came from the testimony of the employee's treating physician, Dr. Quinn Capers, a cardiologist. Dr. Capers first met the employee when he was admitted to the emergency room following the accident. He diagnosed the employee as having acute myocardial infarction and cardiac arrest. Dr. Capers testified that the employee had coronary artery disease, which is a disease that develops over time. Dr. Capers further testified that although he did not know for certain what precipitated the heart attack, it was "possible" the physical demands of the employee's job caused it. When Dr. Capers was asked the question, "Even though you are not certain his physical activities that day caused the myocardial infarction, could his work activities have caused it?" he answered "Yes." Dr. Capers testified at least four different times that the employee's work activities could have caused his heart attack, although "we never know for certain." Dr. Capers also stated that the employee was at risk for heart disease because he smoked cigarettes, was on medication for elevated cholesterol, and had a family history of heart problems.

The trial court found that the employee's job entailed carrying a heavy toolbox from his vehicle to the elevator power facility or the location of a stalled elevator. The trial court also found that in order for the employee to perform his job he had to climb stairs, climb on top of elevator cars, and climb in and out of elevator shafts. The trial court further found that the employee serviced or repaired nine elevators on the day that he suffered the heart attack and thirteen elevators the day before. Relying upon Dr. Capers' testimony that the employee's heart attack could have resulted from the physical exertion of his job, the trial court determined that the employee's death arose out of his employment. Accordingly, the employee's widow and son were awarded death benefits, funeral expenses, and medical expenses. The employer's appeal was argued before the Special Workers' Compensation Appeals Panel pursuant to Tennessee Code Annotated § 50-6-225(e)(3), but transferred to the full Supreme Court prior to the Panel issuing its decision.

The employer contends before this Court that the plaintiffs are not entitled to workers' compensation benefits because the employee was not physically exerting himself when he suffered the heart attack, but was merely driving home in clear weather. The employer argues that there is no proof of a specific act that precipitated the employee's heart attack while he was driving, and that his work activities the day of the attack and the day prior to the attack did not include physically strenuous activity. The employer further argues that Dr. Caper's testimony is insufficient to causally connect the employee's heart attack to his employment activities given that Dr. Capers testified that the cause of the heart attack was coronary artery disease and that the precise triggering event was unknown. The employer contends that allowing the trial court's judgment to stand would be

tantamount to adopting a rule allowing any employee to recover who happens to suffer a heart attack while on the job. For the reasons explained below, we disagree.

## Analysis

The standard of review in a case such as this is de novo upon the record of the trial court, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-225(e)(2) (2003 Supp.). When issues regarding credibility of witnesses and the weight to be given their testimony are before a reviewing court, considerable deference must be accorded the trial court's factual findings. Krick v. City of Lawrenceburg, 945 S.W.2d 709, 712 (Tenn. 1997). However, this Court may draw its own conclusions about the weight and credibility of expert testimony when the medical proof is presented by deposition, as it was here, since we are in the same position as the trial judge to evaluate such testimony. Id.

In order to be eligible for workers' compensation benefits, an employee must suffer an "injury by accident arising out of and in the course of employment which causes either disablement or death . . . ." Tenn. Code Ann. § 50-6-102(12) (2003 Supp.). The statutory requirements that the injury "arise out of" and occur "in the course of" the employment are not synonymous. Sandlin v. Gentry, 300 S.W.2d 897, 901 (Tenn. 1957). An injury occurs "in the course of" employment if it takes place while the employee was performing a duty he or she was employed to perform. Fink v. Caudle, 856 S.W.2d 952, 958 (Tenn. 1993). Thus, the course of employment requirement focuses on the time, place, and circumstances of the injury. Hill v. Eagle Bend Mfg. Inc., 942 S.W.2d 483, 487 (Tenn. 1997).

In contrast, "arising out of" employment refers to causation. Id.; Reeser v. Yellow Freight Sys., Inc., 938 S.W.2d 690, 692 (Tenn. 1997). An injury arises out of employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Fink, 856 S.W.2d at 958. The mere presence of the employee at the place of injury because of the employment is not sufficient, as the injury must result from a danger or hazard peculiar to the work or be caused by a risk inherent in the nature of the work. Thornton v. RCA Serv. Co., 221 S.W.2d 954, 955 (Tenn. 1949). Thus, "an injury purely coincidental, or contemporaneous, or collateral, with the employment . . . will not cause the injury . . . to be considered as arising out of the employment." Jackson v. Clark & Fay, Inc., 270 S.W.2d 389, 390 (Tenn. 1954). Although causation in a workers' compensation case cannot be based upon speculative or conjectural proof, absolute certainty is not required because medical proof can rarely be certain, and any reasonable doubt in this regard is to be construed in favor of the employee. Hill, 942 S.W.2d at 487. Our courts have thus consistently held that an award of benefits may properly be based upon medical testimony to the effect that the employment could or might have been the cause of the worker's injury when, from other evidence, it can reasonably be inferred that the employment was the cause of the injury. Id.

-4-

In the present case, there is no dispute that the employee's heart attack occurred in the course of his employment. Rather, the dispute focuses on whether the employee's heart attack arose out of the employment. In resolving this question, we observe that, when analyzed causally, Tennessee's heart attack cases can be categorized into two groups: (1) those that are precipitated by physical exertion or strain, and (2) those resulting from mental stress, tension, or some type of emotional upheaval. Bacon v. Sevier County, 808 S.W.2d 46, 49 (Tenn. 1991). If the heart attack results from physical exertion or strain, it is unnecessary that there be extraordinary exertion or unusual physical strain. Id. Thus, it makes no difference that the heart attack was caused by ordinary physical exertion or the usual physical strain of the employee's work. Id. Nor does it matter that the employee suffered from preexisting heart disease, as an employer takes an employee as he finds him, that is, subject to preexisting physical defects and afflictions. Id.; Coleman v. Coker, 321 S.W.2d 540, 541 (Tenn. 1959).

However, the analysis is different when the heart attack is caused by a mental or emotional stimulus rather than physical exertion or strain. In such cases, "it is obvious that in order to recover when there is no physical exertion, but there is emotional stress, worry, shock, or tension, the heart attack must be immediately precipitated by a specific acute or sudden stressful event, rather than generalized employment conditions." Bacon, 808 S.W.2d at 52. Thus, if a worker's heart attack is caused by a mental or emotional stimulus rather than physical exertion or strain, there must be a "climatic event or series of incidents of an unusual or abnormal nature" if a recovery is to be permitted. Id. Although "excessive and unexpected mental anxiety, stress, tension or worry attributable to the employment can cause injuries sufficient to justify an award of benefits," Resser, 938 S.W.2d at 692, the ordinary mental stress of one's occupation does not because "[e]motional stress, to some degree, accompanies the performance of any contract of employment." Cunningham v. Shelton Sec. Serv., Inc., 46 S.W.3d 131, 136-37 (Tenn. 2001).

In this case, no assertion has been made that the employee's heart attack resulted from emotional or mental stress associated with his work, but rather from the physical aspects of his work. Therefore, this dispute is controlled by the line of cases recognizing that it makes no difference that the employee, prior to the heart attack, suffered from preexisting heart disease or that the heart attack was caused by ordinary physical exertion or the usual physical strain of the employee's work.[1] Accordingly, the employer's argument that the employee did nothing out of the ordinary during the course of the workday on March 6 and 7, 2002 is misplaced. The evidence in the record indicates that on those two days the employee serviced or repaired twenty-two elevators with little sleep. Assuming that the employer is correct that the employee did nothing unusual on those two days, the record establishes, at least inferentially, that he performed tasks such as climbing stairs, climbing on top of elevator cars, inspecting hydraulic, electrical, and mechanical systems, lubricating belts and chains, and checking the condition of elevator shafts by climbing in and out of them using a ladder. According to one of the employee's co-workers with thirty years of experience as an elevator mechanic, even a routine inspection involved climbing on top of the cars and checking the shafts for

---

[1]Like Tennessee, a majority of jurisdictions do not require that an employee's heart attack be caused by extraordinary physical exertion or unusual physical strain. 2 Larson's Workers' Compensation Law, § 43.03 (2002).

leaks and debris. There is also evidence in the record from which the trial court could have legitimately concluded that the employee carried a heavy toolbox from his van to where he was working. Relying on the testimony of one of Mr. Clark's co-workers, the employer contends that the toolbox weighed less than the twenty-eight pounds that Mr. Clark's son said that it weighed. However, our review of the co-worker's testimony reveals that he acknowledged that he really did not know what the toolbox weighed.

Turning to the medical proof, we note that although Dr. Capers could not say for certain what caused the employee's heart attack, he stated that it was possible that the physical demands of the employee's job caused it. When Dr. Capers was asked the question, "Even though you are not certain his physical activities that day caused the myocardial infarction, could his work activities have caused it?" he answered "Yes." In fact, Dr. Capers stated at least four different times that the employee's work activities could have caused the heart attack. The employer presented no medical evidence to refute the testimony of Dr. Capers.

As noted above, an award of benefits may properly be based upon medical testimony to the effect that the employment could have or might have caused the workers' injury, and it makes no difference that the employee had preexisting heart disease. Hill, 942 S.W.2d at 487; King v. Jones Truck Lines, 814 S.W.2d 23, 29 (Tenn. 1991). As we have stated before,

> [o]ur approach has been to recognize the imprecision of medical proof of causation and hold that medical testimony that the normal physical exertion of employment could have or might have caused the [heart attack] is sufficient to make out a prima facie case that the injury or death arose out of employment. If the employer introduces no evidence to the contrary, the preponderance of evidence supports an award of worker's compensation benefits.

King, 814 S.W.2d at 29. Such is the case here.

Finally, the employer maintains that there is no evidence of what the employee was doing on the day that he had the heart attack other than driving home in the company van. We disagree, as there is uncontradicted evidence that the employee was going about the employer's business servicing and repairing elevators that day and the day before, all done with little sleep. The employer's position implies that no recovery can be permitted in the absence of evidence that the worker was engaged in strenuous activity at the precise moment the heart attack occurred. No persuasive authority is offered for this notion, and we have found none. Cases relied upon by the employer, such as Willoughby v. Federated Mutual Ins. Co., 2002 WL 1358707 (Tenn. Worker's Comp. Panel June 20, 2002) and Wingert v. Sumner County, 908 S.W.2d 921 (Tenn. Workers' Comp. Panel 1995), resulted in a judgment for the employer because there was insufficient proof of causation.[2] The cases do not stand for the overly broad proposition that a worker's family must

_____

[2]The employer also relies on Laxton v. State, 2003 WL 22300135 (Tenn. Worker's Comp. Panel Oct. 7, 2003). The only issue in Laxton was whether the employee's suit was timely filed. Therefore, Laxton is not helpful in resolving this case. Neither are the cases cited by the employer having to do with injuries caused by mental stress

-6-

automatically be denied benefits unless the worker was doing something physically strenuous at the very moment the heart attack occurred.[3]  In our view, such a rule would be both unduly restrictive, barring meritorious claims where medical proof of causation exists, and  inconsistent with the goals and purposes underlying the workers' compensation system.  Cases such as the present one are necessarily fact dependent, and it would be difficult to formulate a bright-line rule that would be applicable to all heart attack cases and still produce just results.  See Lawrence County Highway Dep't. v. Hardiman, 531 S.W.2d 792, 794 (Tenn. 1975) ("There is no iron-clad rule which calls for payment of benefits to an employee who is disabled from a heart attack while on the employer's premises and for denial of benefits to an employee who is disabled from a heart attack that occurs while the employee is on the way home from work.").

In the final analysis, the key in cases such as this one is whether the evidence links the physical activities of the employment with the heart attack, not merely whether there is proof of physical exertion at the moment the heart attack occurred, although such proof would make the employee's case stronger.  While an award cannot be based on speculative or conjectural evidence of causation, the rule advocated by the employer is not only based on an incorrect interpretation of our law, but would produce unjust results by denying a remedy where one is warranted under workers' compensation principles in general and under the facts of this case in particular.

Accordingly, on the basis of the record in this case, we cannot say that the evidence preponderates against the trial court's determination that there was a sufficient causal relationship between the employee's work activities and his heart attack.  To the extent that any reasonable doubt may exist on this point, we construe it in the employee's favor.  Hill, 942 S.W.2d at 487.  We therefore affirm the judgment of the trial court.[4]

## Conclusion



or emotional upheaval, as this case involves only the physical aspects of the employee's work.

[3]In Willoughby, for example, the employee's heart attack occurred while he was taking his daughter to school.  No evidence was presented that the physical demands of the employee's job as a car salesman caused the heart attack.  At most, the medical proof showed that general, everyday mental stress associated with the employment contributed to the heart attack.  Thus, Willoughby is not helpful to the employer in the present case.

[4]The plaintiffs have requested sanctions under Tennessee Code Annotated section 27-1-122, which enables appellate courts to award damages against parties whose appeals are frivolous or brought solely for delay.  While we agree with the plaintiffs that parties should not be forced to bear the cost and annoyance of baseless appeals, the employer's appeal in this case cannot be described as devoid of merit such that it had no reasonable chance of succeeding.  See Jackson v. Aldridge, 6 S.W.3d 501, 504 (Tenn. Ct. App. 1999).  Therefore, the plaintiffs' request for damages is denied.

For the reasons stated above, the judgment of the trial court is affirmed. The costs of this appeal are taxed to the appellant, Nashville Machine Elevator Company, Incorporated, and its surety, for which execution may issue if necessary.

_____

FRANK F. DROWOTA, III, CHIEF JUSTICE