

**FILED**
**Nov 25, 2020**
**11:20 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Jeannie Hart | ) | Docket No. 2018-07-0436 |
| | ) | |
| v. | ) | State File No. 17700-2018 |
| | ) | |
| ThyssenKrupp Elevator Corp., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard October 15, 2020 |
| Compensation Claims | ) | via WebEx |
| Allen Phillips, Judge | ) | |

---

### Affirmed as Modified and Certified as Final

---

This appeal concerns the appropriate medical impairment rating for an employee who sustained a work-related shoulder injury. The employer asserts the trial court erred in awarding permanent benefits based upon a six percent medical impairment rating because a portion of the rating was attributable to a non-work-related condition. The employee contends the authorized treating physician's opinion that the employee had a six percent impairment is presumed correct under Tennessee Code Annotated section 50-6-204(k)(7) and that the employer did not produce competent evidence to rebut the presumption. Following a compensation hearing, the trial court determined the employee established by a preponderance of the evidence that the distal clavicle resection, performed to treat the employee's pre-existing AC arthrosis, was reasonably necessary medical treatment as a result of the work injury, and it awarded permanent partial disability benefits based on the full impairment rating assigned by the authorized physician. The employer has appealed. Having carefully reviewed the record, we modify the trial court's award of permanent disability benefits and certify as final the trial court's order as modified.

Judge Pele I. Godkin delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge David F. Hensley joined.

Hailey H. David, Jackson, Tennessee, for the employer-appellant, ThyssenKrupp Elevator Corp.

Jonathan L. May, Memphis, Tennessee, for the employee-appellee, Jeannie Hart

## Factual and Procedural Background

The underlying facts in this case are not in dispute. On March 6, 2018, Jeannie Hart ("Employee") injured her left shoulder reaching for a piece of metal that slipped off her engraving station in the course and scope of her employment with ThyssenKrupp Elevator Corp. ("Employer"). The injury was accepted as compensable, and Employee received authorized medical care from Dr. Jason Hutchison.

Dr. Hutchison first saw Employee on March 29, 2018, and he diagnosed her with rotator cuff syndrome, medial epicondylitis, and a medial flexor strain in her elbow. X-rays of her left shoulder revealed "moderate AC arthritis." Dr. Hutchison ordered an MRI, which revealed "a tear along the base of the superior labrum, AC arthritis with hypertrophy, and some tendinitis of the rotator cuff." After reviewing the MRI, Dr. Hutchison diagnosed Employee with a superior labral tear, rotator cuff syndrome, and acromioclavicular arthritis ("AC arthritis"). He prescribed physical therapy and assigned temporary work restrictions. On May 21, Employee returned to Dr. Hutchison with continued complaints. Dr. Hutchison recommended surgery and subsequently performed a subpectoral biceps tenodesis and debridement of the labrum with subacromial decompression and distal clavicle resection.

Following surgery, Employee was placed in a sling and began another course of physical therapy. After reporting some burning and numbness down her arm, EMG and nerve conduction studies were performed to "rule out cervical radiculopathy." Test results were interpreted as normal, and Employee continued with physical therapy, making "slow gains . . . [until] she plateaued." Thereafter, Employee underwent a repeat MRI of her shoulder and a functional capacity evaluation that resulted in the placement of permanent lifting restrictions. Dr. Hutchison subsequently placed Employee at maximum medical improvement and assigned a six percent medical impairment rating. In his medical report, Dr. Hutchison explained the basis for his impairment rating using the American Medical Association's *Guides to the Evaluation of Permanent Impairment, Sixth Edition* ("AMA Guides"):

> Based upon [the AMA Guides], permanent impairment for the upper extremity in the shoulder, according to page 390 subheading 15 2E, when multiple pathologies co-exist, the most significant is used. In her situation, it would be the SLAP tear, which we treated according to page 404 that is a Class 2, 3% and she would adjust up based upon the net adjustment formula to Class 5. Alternatively, because we did do a distal clavicle resection, given her severe AC arthrosis, *which again was not work related but was significant pathology and was treated concomitantly*[], we could go to page 403, table 15-5, that is a 10% whole person. Based upon the fact that she did end up with restrictions and continued pain that we could not explain, I am going to use this rating as the more significant because I think it is more

2

appropriate for her level of dysfunction, so 10% off the distal clavicle on page 403 is our rating; that is a 6% whole person according to table 15-11, page 420.

(Emphasis added.)

Employee returned to Dr. Hutchison in October 2019 reporting that she was doing well until "[three] weeks ago when her pain came back" and then gradually worsened. Dr. Hutchison noted the shoulder exam looked "quite good" based upon appearance and range of motion, but added that complaints of pain in the upper arm were "disproportionate" from what he would expect. Dr. Hutchison expressed some doubts about the severity of Employee's complaints, given his observations on physical exam. He noted her symptoms seemed "very non-physiologic and would fit more with something inflammatory such as her fibromyalgia or direct more to her previous injury or surgery." Dr. Hutchison prescribed medication and referred Employee for a second opinion if her pain persisted.

Employee saw Dr. Mark Harriman on December 19, 2019, for a medical evaluation at Employer's request. Dr. Harriman documented Employee's complaints involving arm pain, noting "[t]here were no findings whatsoever in the glenohumeral joint or shoulder region where the other part of her surgery was performed." Dr. Harriman reported Employee's left arm symptoms "seem[ed] out of proportion to any physical exam findings," and he did "not have an explanation for her symptoms." He recommended an MRI of Employee's arm, which was performed on January 10, 2020, and revealed no abnormalities. Following a telephonic consult on January 13, 2020, Dr. Harriman released Employee to full duty.

In a February 10, 2020 deposition, Dr. Hutchison described the distal clavicle resection surgery he performed and the basis for the six percent impairment rating he assigned. Specifically regarding the surgery, he testified to "performing a biceps tenodesis and debridement of the labrum," explaining that he "removed the biceps, debrided the labrum so it scars back down, and then tenodesed the biceps." Dr. Hutchison also performed a subacromial decompression, which he described as "basically opening up the subacromial space which is where the rotator cuff lives," and a distal clavicle resection, "which is where you take out a distal 8 millimeters of the clavicle in the setting of an AC arthritis so that the bones are no longer touching one another and thereby less symptomatic."

Dr. Hutchison agreed that "each element of [the] procedure . . . performed was designed specifically to address the symptoms that [Employee] was complaining of following [her] work injury." He testified that Employee continued to have more pain and symptoms, including numbness in her hands, which concerned him. Dr. Hutchison acknowledged that, going into surgery, he wanted to "leave no stone unturned" and to "fix everything that can be fixed." He testified that the distal clavicle resection was something

3

he did "in hopes of relieving [Employee's] pain," and that it was "appropriate when you have someone who has rotator cuff tendinitis that is persistent and not improving as [Employee] did." Dr. Hutchison stated he likely would not have recommended or performed a distal clavicle resection absent Employee's work injury, since it is likely he would not have seen her had she not been injured at work.

Dr. Hutchison also testified that he performed surgery on Employee's shoulder because of her labral tear and biceps pathology resulting from the work injury and not because of the pre-existing AC arthrosis seen on the MRI. He stated that, generally, it would be his opinion that the rating for the labral tear "is the proper rating." However, he chose to use the distal clavicle impairment rating because Employee "consistently presented with poor shoulder function," and he "felt her outcome was poor and [the rating was] justified." Dr. Hutchison also agreed that the rating for the distal clavicle was "related to [Employee's] AC arthrosis," which he acknowledged "was not work-related." On cross-examination, he testified that the six percent rating to the body was "not entirely representative of just the work-related problem" and took into account "some preexisting condition" separate from Employee's work injury. When questioned, Dr. Hutchison agreed that the AMA Guides directs providers to "pick the highest *causally related* impairment" when assigning an impairment for a patient with multiple diagnoses. (Emphasis added.)

Dr. Hutchison explained there were two methods by which he could have rated Employee: (1) for the labral tear and subpectoral tenodesis, which he described as the "true injury [Employee] had at work," or (2) for the distal clavicle resection necessitated by the AC arthrosis. Dr. Hutchison testified that "based on everything that I had seen with [Employee] and what we saw on the FCE that [three] percent was too low. So I chose to use the distal clavicle as it related to the rating. And came up with a [six] percent whole person," adding it was "most appropriate for the outcome she had."

At trial, the sole issue was the extent of Employee's permanent medical impairment. Employee argued Dr. Hutchison's opinion assessing a six percent impairment is presumed correct under Tennessee Code Annotated section 50-6-204(k)(7), absent rebuttal by a preponderance of the evidence. Employer asserted a three percent impairment rating was proper because that rating considered only work-related conditions. Following the hearing, the trial court concluded Employee "established by a preponderance of the evidence that the distal clavicle resection was reasonably necessary medical treatment." In its order, the trial court stated that "[t]he authorized treating physician testified he *would not have performed* the distal clavicle resection *but for the work injury*. Additionally, [Dr. Hutchison] explained why he performed the procedure, specifically, to improve [Employee's] loss of function due to the injury. It was not done solely because of pain complaints." The court noted Dr. Hutchison's opinion was the only expert opinion in the record and awarded Employee permanent partial disability benefits based upon a six percent impairment rating. Employer has appealed.

4

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2019). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence," *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at \*6 (Tenn. Workers' Comp. Panel Jan. 18, 2018), or deposition testimony, *see Brees v. Escape Day Spa & Salon*, No. 2014-06-0072, 2015 TN Wrk. Comp. App. Bd. LEXIS 5, at \*16 (Tenn. Workers' Comp. App. Bd. Mar. 21, 2015) ("[T]he trial court occupies no better position than this Appeals Board in reviewing and interpreting documentary evidence."). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2019).

## Analysis

Employer contends the trial court erred in awarding permanent disability benefits based on a six percent rating because the preponderance of the evidence established that the six percent rating improperly accounted for non-work-related conditions "and was given in contradiction to the clear instructions of the *AMA Guides*." More specifically, Employer asserts the trial court erred in three ways: (1) by improperly considering Employee's non-work-related conditions; (2) by relying on a rating given contrary to clear instructions in the AMA Guides; and (3) by improperly relying on a rating that the physician admits was given due to pain despite the directive of Tennessee Code Annotated section 50-6-204(k)(3) not to consider pain when calculating impairment.

Citing Tennessee Code Annotated section 50-6-204(k)(7), Employee argues that, because Dr. Hutchison is the authorized physician, his "opinion of the injured employee's permanent impairment rating shall be presumed to be the accurate impairment rating," and is rebuttable only by "the presentation of contrary evidence that satisfies a preponderance of the evidence standard." Tenn. Code Ann. § 50-6-204(k)(7). Further, Employee maintains that, even if Dr. Hutchison improperly calculated the impairment rating, Employer failed to present expert medical proof to support an alternative award. Employee insists that "mere cross-examination" is insufficient to overcome the presumption of correctness attributable to the authorized physician's opinion on the issue of impairment,

noting Dr. Hutchison "had numerous opportunities to change his opinion [and] he did not do so." We agree with Employer's contention that the six percent impairment rating improperly includes conditions that Employee did not prove arose primarily out of her employment.

*Causation*

In determining whether the trial court improperly relied on non-work-related conditions in its award of benefits, we must first address causation. For a work injury to be compensable, it must be shown "by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(14)(B). A disability arising from a compensable work injury must be proven "to a reasonable degree of medical certainty," Tennessee Code Annotated section 50-6-102(14)(C), which requires testimony from a physician that the condition giving rise to the disability was causally related to the work injury "more likely than not considering all causes, as opposed to speculation or possibility," Tennessee Code Annotated section 50-6-102(14)(D).

It is undisputed that Employee sustained a compensable work-related injury to her left shoulder, resulting in a labral tear and biceps tendinitis. After Employee failed to improve with conservative treatment, Dr. Hutchison determined that surgical intervention was appropriate, testifying that "[a] labral repair versus biceps tenodesis was the indication for surgery." It is also undisputed that Employee's AC arthrosis was not a work-related condition. Moreover, the record contains no lay or expert medical testimony suggesting that Employee's AC arthrosis was aggravated or exacerbated by Employee's work incident.

However, that does not end the inquiry. As the trial court observed, it is well-established Tennessee law "that all the medical consequences and sequelae that flow from the primary injury are compensable." *Rogers v. Shaw*, 813 S.W.2d 397, 400 (Tenn. 1991). At the same time, as Employer pointed out in its brief, "an injury or condition that exists collateral to the injury causally related to an injured worker's employment is not compensable," and "[w]orkers' compensation coverage is not the equivalent of general health and accident insurance." (Citations omitted.) No evidence was presented in this case supporting a finding that the AC arthrosis, which necessitated the distal clavicle resection, "flowed from" the primary injury. Thus, the question is whether the distal clavicle resection was merely collateral to the work injury or whether the need for that additional treatment was *caused* by or "made reasonably necessary" by Employee's work accident. An injury arises out of employment when a causal connection exists between the conditions of the work performed and the resulting injury. *Clark v. Nashville Mach. Elevator Co.*, 129 S.W.3d 42, 47 (Tenn. 2004). Further, medical causation of an injury must be established by expert medical testimony in all but the most obvious cases. *See, e.g., Cloyd v. Hartco Flooring Co.*, 274 S.W.3d 638, 643 (Tenn. 2008).

6

Employer maintains that Employee's AC arthrosis and distal clavicle resection were collateral to her work-related injuries and are not compensable. Dr. Hutchison's opinion, which is the only medical opinion in the record addressing causation, supports that assertion. Dr. Hutchison stated in a May 22, 2019 report that Employee's distal clavicle resection was performed due to her severe AC arthrosis "which . . . was not work related." In addition, Dr. Hutchison testified that the distal clavicle excision rating he assigned was related to Employee's AC arthrosis, which was not a work-related condition. In short, our review of the record reveals no evidence of a causal link between Employee's March 6 work incident and the AC arthrosis that led to the need for the distal clavicle resection.

Dr. Hutchison testified it was "unlikely" he would have recommended performing the distal clavicle resection absent Employee's work injury. He acknowledged that, on its own, the distal clavicle "probably would not have been surgically repaired" and agreed it "would be fair" to say the distal clavicle resection was performed because of Employee's work injury, noting that, "without the work injury, I probably am not seeing [Employee]." We conclude Dr. Hutchison's testimony was insufficient to establish a causal link between the work accident and the need for the distal clavicle resection and does not satisfy the requirements of Tennessee Code Annotated section 50-6-102(14).

In his May 2019 report, Dr. Hutchison provided a detailed description of Employee's surgery, including the "distal clavicle resection, *given [Employee's] severe AC arthrosis, which again was not work related but was significant pathology and was treated concomitantly*." (Emphasis added.) Dr. Hutchison testified he performed surgery on Employee's shoulder because of the labral tear and biceps pathology, not because of the AC arthrosis seen on her MRI. He also testified that the impairment rating for the distal clavicle resection was related to Employee's AC arthrosis, which was not a work-related condition. Thus, there is no evidence in the record that Employee's distal clavicle resection was made necessary by the work injury. The fact that both procedures were performed during the same surgery is not sufficient to establish causation. Dr. Hutchison's testimony, when taken as a whole, fails to provide the necessary causal link between the work injury and the distal clavicle resection.

In its order, the trial court attempted to distinguish this case from *Sanchez v. Saturn Corp.*, No. M2003-01894-WC-R3-CV, 2004 Tenn. LEXIS 711 (Tenn. Workers' Comp. Panel Aug. 31, 2004). In *Sanchez*, after the employee sustained a work-related biceps rupture and potential rotator cuff tear, the treating physician performed a subacromial decompression, distal clavicle resection, and debridement of the employee's shoulder area. *Id.* at *3. After the treating physician failed to provide an impairment rating for the distal clavicle surgery, the employee saw another doctor who provided an impairment rating for the surgery based upon his interpretation of the AMA Guides as "dictating an impairment because the resection was performed." *Id.* at *4. Subsequently, the treating physician "explicitly refuted" the second doctor's testimony as to causation and testified instead that the employee's distal clavicle resection had "nothing to do with the biceps rupture." *Id.* at

7

*9. Following its consideration of competing medical opinions, the trial court accredited the opinion of the treating physician over the opinion of the second doctor and denied benefits for the distal clavicle resection. *Id.* Finding the employee failed to meet his burden in showing the preponderance of the evidence was otherwise, the Supreme Court's Special Workers' Compensation Appeals Panel affirmed the trial court and concluded the distal clavicle resection was not causally related medical treatment made reasonably necessary by the work accident. *Id.*

Here, the trial court concluded "the opposite is true," noting that "[t]he authorized treating physician testified he *would not have performed* the distal clavicle resection *but for the work injury.*" However, the trial court's characterization of this testimony does not take into account the entirety of Dr. Hutchison's explanation, which indicated that, without the work injury, Employee would not have been his patient. This testimony explains how Dr. Hutchison came to perform the procedure in question, but it does not provide a causal connection between the work injury and the need for the distal clavicle procedure. When considered as a whole, it is clear that Dr. Hutchison repeatedly testified the need for the distal clavicle resection was due to a pre-existing condition that was not work related. Based upon our review of the record, we conclude the evidence preponderates against the trial court's finding that Employee's distal clavicle resection was reasonably necessary medical treatment causally related to her work-related injuries.

*Impairment Rating*

Having concluded the evidence fails to establish Employee's distal clavicle resection was causally related to her work injury, we turn to whether the court erred in awarding benefits based on a six percent impairment rating. Dr. Hutchison testified there were two ways he could have assessed Employee's impairment. The first was "based on her labral tear and the subpectoral tenodesis," which Dr. Hutcheson testified "is the injury as it pertains to what [he] believe[d], the pop she felt and *the true injury she had at work.*" (Emphasis added.) The second method was to provide a rating that took into account Employee's AC arthrosis and the distal clavicle resection. Dr. Hutchison acknowledged that the AMA Guides instruct physicians to use the higher of two ratings when there are multiple pathologies. He testified he chose to use the rating associated with the distal clavicle resection because he believed it was "the most appropriate for the outcome [Employee] had," testifying as follows:

Q: The distal clavicle excision rating that you gave, you state here in your explanation that was related to her AC arthrosis.

A: Correct.

Q: Which was not work-related.

8

A: Correct.

Q: Okay. So the 6 percent rating to the body is not entirely representative of just the work-related problem?

A: Correct.

Q: It takes into account some preexisting condition that has nothing to do with the work injury?

A: Yes.

Q: So the rating that takes into account just the work-related problem, according to the instructions in the *Guides*, would be 3 percent to the body?

A: Correct.

Q: And the *Guides* do tell us at page 387 that when a patient has different diagnoses, that you're supposed to pick the highest causally related impairment. Correct?

A: Correct.

As previously noted, the record contains no evidence of a causal link between Employee's AC arthrosis and the work incident, and there is no proof that the need for the distal clavicle resection was the direct and natural consequence of Employee's compensable work injuries. Moreover, no evidence was presented showing the AC arthrosis was aggravated or advanced by the work accident. Thus, we conclude a causally related impairment rating cannot be based upon Employee's AC arthrosis and distal clavicle resection.

Finally, although we agree that judges and attorneys are not well-suited to giving medical opinions, *see Scott v. Integrity Staffing Solutions*, No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *8 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015), we do not agree that accepting Employer's position in the instant case would mark a significant departure from well-established law or that it would open the door to legal professionals offering expert medical opinions. We also find no merit in Employee's contention that, in order to rebut the presumption of correctness afforded an authorized physician's opinion as to impairment, a dissatisfied party must procure a contrary opinion from another expert. Nor do we agree that eliciting testimony from an expert on cross-examination is *per se* insufficient to rebut the presumption, as Employee insists. In this case, there is a single authorized physician who provided an impairment rating on a Form

9

C-32 Final Medical Report.  After submitting that form, that physician was deposed, and his testimony is clear and unequivocal that: (1) the six percent rating he assigned contemplated the distal clavicle resection performed for Employee's AC arthrosis and (2) this condition was not causally related to the work injury.  Dr. Hutchison's testimony is likewise clear that, with respect to Employee's work-related injuries, she has a three percent permanent partial impairment.[1]  We therefore conclude Employer sufficiently rebutted the portion of Dr. Hutchison's direct testimony regarding the six percent impairment rating during cross-examination and, as a result, Employee is entitled to permanent partial disability benefits based on a three percent medical impairment.  We modify the trial court's award to reflect that conclusion.[2]

## Conclusion

We modify the trial court's award of permanent partial disability benefits to reflect an award of three percent permanent partial disability totaling 13.5 weeks of benefits and certify the trial court's order, as so modified, as final.  Costs on appeal are taxed to Employee.

---

[1] We note that our decision as to the extent of impairment does not depend on a conclusion that Employee does not have a six percent medical impairment.  Rather, we conclude that, of the total impairment rating, only a portion of that impairment, as identified by the authorized physician, is related to the work injury.  Thus, we do not conclude that the physician assigned an incorrect impairment rating.  Instead, consistent with the physician's testimony, we conclude only a portion of that impairment is attributable to the work injury.

[2] Our conclusion that Employee failed to establish causation for the impairment resulting from her AC arthrosis and distal clavicle resection pretermits Employer's issue questioning whether Dr. Hutchison improperly considered Employee's pain complaints in calculating Employee's impairment.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| Jeannie Hart | ) | Docket No. 2018-07-0436 |
|---|---|---|
| | ) | |
| v. | ) | State File No. 17700-2018 |
| | ) | |
| ThyssenKrupp Elevator Corp., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard October 15, 2020 |
| Compensation Claims | ) | via WebEx |
| Allen Phillips, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 25th day of November, 2020.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Jonathan L. May<br>Sandra Haynes | | | | X | jmay@forthepeople.com<br>shaynes@forthepeople.com |
| Hailey H. David<br>Joanna Smith | | | | X | davidh@waldrophall.com<br>smithj@waldrophall.com |
| Allen Phillips, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |



Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov