IN THE SUPREME COURT OF TENNESSEE
SPECIAL WORKERS' COMPENSATION APPEALS PANEL
AT JACKSON
Assigned on Briefs January 13, 2026

## DARLENE TAYLOR AS SURVIVING SPOUSE OF DARRELL TAYLOR v. DALE'S RECYCLING, ET AL.

**Appeal from the Workers' Compensation Appeals Board**
**Court of Workers' Compensation Claims**
**No. 2023-07-5405   Allen Phillips, Judge**

---

### No. W2025-01193-SC-R3-WC – Mailed March 24, 2026

---

This is an appeal from the Workers' Compensation Appeals Board, which affirmed the judgment of the Court of Workers' Compensation Claims awarding death benefits. On June 22, 2023, Employee, a professional truck driver, was stopped by a deputy sheriff after the officer observed pieces of metal falling out of Employee's trailer. During this stop, Employee suffered a heart attack and died on scene. Employee's wife filed a petition for benefit determination, and the case ultimately proceeded to a hearing where the parties disputed causation. The Court of Workers' Compensation Claims ("Trial Court") awarded benefits, finding that Employee's wife had shown to a reasonable degree of medical certainty that the June 22, 2023 work incident contributed more than fifty percent to Employee's heart attack and death when considering all causes. The Workers' Compensation Appeals Board ("Appeals Board") affirmed. Employer has appealed and the appeal has been referred to the Special Workers' Compensation Appeals Panel pursuant to Tennessee Supreme Court Rule 51. We affirm.

### Tenn. Code Ann. § 50-6-217(a)(2)(B) Appeal as of Right; Decision of the Workers' Compensation Appeals Board Affirmed

MARY L. WAGNER, J., delivered the opinion of the court, in which VANESSA A. JACKSON, SR. J., and W. MARK WARD, SR. J., joined.

Richard Clark and Benjamin Norris, Nashville, Tennessee, for the appellants Dale's Recycling and Insurance Company of the West.

Jonathan May, Memphis, Tennessee, for the appellee Darlene Taylor as surviving spouse of Darrell Taylor.

# OPINION

## Factual and Procedural Background

Darrell Taylor ("Employee") was a professional truck driver for Dale's Recycling ("Employer"), a metal recycling business. At the time of his death, Employee had chronic hypertension and diabetes, which he had been treating with his primary care physician for over five years prior. He had his labs checked at regular intervals, most recently in December 2022, took his prescription medications regularly, and had regular checkups with his doctor. Employee also periodically checked his blood pressure and blood sugar at home. Employee had formerly been a smoker but had not smoked to his wife's knowledge in over twenty years. Employee had cleared his Department of Transportation physical six or seven weeks before his death.

On June 22, 2023, Employee was driving a trailer loaded with several thousand pounds of steel metal on behalf of Employer. Employee left the house around 6:00 a.m. and called his wife that morning, giving no indication to her that he was not feeling well. Later, Deputy Dennis Poteet of the Grayson County, Kentucky Sheriff's Department was driving behind Employee through a construction zone when he noticed metal hanging over the rear of the trailer. Some of the metal fell out and struck another semi-truck. After they exited the construction zone, Deputy Poteet activated his lights and stopped Employee. The driver of the other semi-truck also pulled over, and Deputy Poteet instructed that driver to wait in his truck.

Before explaining the reason for the stop, Deputy Poteet asked Employee to exit the cab. Employee "was very anxious and nervous initially" but "seemed to calm down" after Deputy Poteet explained to him what had happened. Employee said he was unaware he had been losing part of his load. Again, Employee did not make any comments about not feeling well.

Deputy Poteet instructed Employee that he would need to rearrange the metal scraps before he could leave without a citation. Employee explained that he had been unable to "power up" the tarp that typically covered his trailer that morning. He agreed to rearrange his load, and Employee and Deputy Poteet walked to the back of the trailer where there was metal hanging off. Deputy Poteet did not pick up any metal scraps and did not know their weights. During this conversation, the other driver also approached to share that there was no damage to his truck. Deputy Poteet responded that he was free to leave.

Mr. Bobby Dabbs, Employer's Vice President of Operations, could not recall a time in the preceding year when a driver had to manually rearrange a trailer's load. Trailers,

2

including the one driven by Employee on the day of his death, are loaded by a crane prior to embarking on trips. Although Employee was not responsible for physically loading his trailer, he was responsible for ensuring that it was loaded correctly by the machine.

Deputy Poteet described the trailer as "extremely tall for a dump trailer," likely the maximum height. At the Deputy's direction, Employee stepped up on a tire and climbed a ladder attached to the truck to get into the back of the trailer. Deputy Poteet watched Employee move the pieces that were hanging from the trailer. Then Deputy Poteet returned to his vehicle to take a phone call. From his vehicle, Deputy Poteet could see Employee working his way around the edge of the trailer until the Deputy lost sight of him. It was approaching midday at the time of the stop, and the trailer was warm from the metal and summer heat.

After approximately ten minutes, Deputy Poteet grew concerned that he could not see Employee. Deputy Poteet called out for Employee with no response. Deputy Poteet then climbed the ladder to the top of the trailer and saw Employee on his back looking up with a blank stare. Deputy Poteet could not find a pulse on Employee and called for dispatch. When medical personnel arrived, they confirmed Employee had died. In the coroner's verdict report and on Employee's death certificate, "cardiorespiratory arrest" was listed as the immediate cause of death.

On August 7, 2023, Employee's wife, Darlene Taylor, filed a petition for benefit determination. After mediation was unsuccessful, a dispute certification notice was filed on June 25, 2024. The case proceeded to hearing on March 11, 2025. The disputed issue was causation—specifically, whether Employee's fatal heart attack arose primarily out of his employment.

Dr. Kishore Arcot was retained by Employer to give an opinion on Employee's primary cause of death. Dr. Arcot is an interventional clinical cardiologist with Memphis Cardiology and offered his opinion via deposition. He testified that Employee had a number of risk factors for cardiovascular disease, including his age, ethnicity, gender, high blood pressure, type 2 diabetes, obesity, history of high cholesterol, and history of smoking. Using those factors, Dr. Arcot calculated Employee's lifetime risk of a heart attack as sixty to seventy percent, and his ten-year risk as around eighteen to twenty percent. Dr. Arcot would not give an opinion regarding whether Employee's cardiovascular disease was "stable" because he said that could not be determined by Employee's risk factors.

In Dr. Arcot's opinion, the "work activities on June 22, 2023, as well as the emotional stress and anxiety [were] not the primary cause" of Employee's heart attack, with the primary cause being anything greater than fifty percent. Instead, he testified that the Employee's "multiple risk factors for coronary artery disease" most likely contributed

3

to his death, "irrespective of the type of work with which [Employee] was engaged."

On cross-examination, Dr. Arcot agreed that Employee's December 2022 labs showed that his blood sugar was at the lowest level to be categorized as diabetic, and that Employee did not need insulin to manage his diabetes. He also agreed that Employee's most recent lipid panel showed results within normal limits as well as higher than normal levels of "good" cholesterol. Dr. Arcot agreed that Employee had not been treated for unstable coronary symptoms and his last blood pressure reading was "okay." He testified that Employee's "primary care doctor was doing his job, and his numbers [were] right[.]" He also agreed that a person who takes his medications decreases his risk of a heart attack.

In Dr. Arcot's opinion, work could not be the cause of Employee's heart attack because a person cannot have chest pain from exertion without underlying conditions for cardiovascular disease in the body. He did agree that physical exertion increases myocardial demand and that sweating can lead to an electrolyte imbalance. Dr. Arcot nevertheless characterized the events of that day as coincidental, because the primary cause of Employee's heart attack was "his own risk factors, his lifestyle, his obesity, his age."

Dr. Arvindh Kanagasundram served as a medical expert for Mrs. Taylor and also testified via deposition. He is a clinical cardiologist at Vanderbilt University Medical Center with a sub-specialization in cardiac electrophysiology. Dr. Kanagasundram testified that Employee had risk factors for stable coronary disease, but "was being managed appropriately for [his] conditions." He based this opinion on Employee's most recent blood tests, which showed that Employee's diabetes was "quite well-controlled" and "showed really excellent, excellent control of his lipid panel with very, very favorable numbers." Dr. Kanagasundram further opined that Employee's blood pressure readings were "very appropriate for well-controlled patients." He testified that Employee's lipid panel would put him at a low risk for sudden cardiovascular death, and that Employee's prescribed medications were "an excellent regimen" for managing his hypertension, diabetes, and high cholesterol. With respect to Employee's weight, Dr. Kanagasundram conceded that a patient like Employee "could stand to lose twenty pounds maybe," but he noted that Employee was not morbidly obese and patients with stable coronary disease can still live very normal and long lives.

Dr. Kanagasundram explained how physical and emotional stressors can result in sudden cardiac death. He testified that what constitutes a high level of physical exertion will vary with the individual, but is generally considered to be "something that's much more than what that individual is exposed to on a daily or weekly basis." For emotional stressors, Dr. Kanagasundram testified that being pulled over by police could be a highly stressful event for someone who regularly drives for work. Indeed, he found that Deputy Poteet's deposition indicated Employee was nervous and under emotional stress. Finally,

4

Dr. Kanagasundram testified that heat, humidity, and sweating are also factors that increase the risk for a cardiovascular event.

In Dr. Kanagasundram's opinion, the emotional stress from being pulled over, combined with the day's heat and the physical exertion from climbing into the trailer to rearrange the load, was the primary cause of Employee's death considering all known causes. By his estimation, the combination of the acute emotional stress and physical exertion was "significantly more" than fifty percent of the pathophysiological changes resulting in Employee's sudden cardiac death. He testified that in the absence of those acute stressors, he would have expected Employee to live a long life.

The Trial Court awarded benefits, finding Dr. Kanagasundram's testimony more persuasive and concluding that Mrs. Taylor had shown to a reasonable degree of medical certainty that Employee's death arose primarily out of his employment. The Appeals Board affirmed, finding that the proof in the record supported the Trial Court's award of benefits.

On appeal before this Panel, Employer does not dispute that the combined emotional stress and physical exertion of the June 22, 2023 incident was more than fifty percent the cause of Employee's heart attack and death. Instead, Employer argues that the Appeals Board erred in analyzing whether Employee's heart attack was precipitated by an emotional stressor of an "abnormal or unusual" nature for Employee personally rather than for a professional truck driver. Employer contends that because Mrs. Taylor failed to show that Employee's encounter with Deputy Poteet was an "abnormal and unusual" stressor for a professional truck driver, compensability must hinge on whether Mrs. Taylor established that physical strain alone contributed more than fifty percent to Employee's heart attack. Employer maintains that Mrs. Taylor did not offer medical proof of this fact, and so she cannot establish causation.

## Standard of Review

Findings of fact are reviewed "de novo upon the record . . . [with] a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-225(a)(2). The interpretation and application of workers' compensation statutes are questions of law that are reviewed de novo with no presumption of correctness. *Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). Workers' compensation statutes "shall not be remedially or liberally construed but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116.

## Analysis

The parties do not dispute that Employee's cause of death was a heart attack. Rather, the dispute centers on whether the heart attack arose primarily out of the employment, such that it is compensable.

In 2013, the Tennessee General Assembly passed the Workers' Compensation Reform Act ("2013 Reform Act"). 2013 Tenn. Pub. Ch. 289. The Act redefined "injury" and amended the burden for establishing causation in workers' compensation cases. *See Edwards v. Peoplease, LLC*, — S.W.3d —, No. W2024-01034-SC-R3-WC, 2025 WL 3706216, at *7 (Tenn. Dec. 22, 2025); *Miller v. Lowe's Home Ctrs., Inc.*, No. 2015-05-0158, 2015 WL 6446638, at *3–5 (Tenn. Workers' Comp. App. Bd. Oct. 21, 2015). Under the current law, an injury by accident is compensable when it "aris[es] primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(12). An injury is accidental "only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(12)(A). In addition, an accidental injury "shall not include the aggravation of a preexisting disease, condition or ailment unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." *Id.* "An injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" Tenn. Code Ann. § 50-6-102(12)(B). "An injury causes death . . . only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death . . . ." Tenn. Code Ann. § 50-6-102(12)(C).

The law regarding the compensability of heart attacks in the workplace was well established prior to 2013 Reform Act. As the Tennessee Supreme Court explained, determining whether an employee's on-the-job heart attack "arose out of the employment" is a causal analysis. *Clark v. Nash. Mach. Elevator Co., Inc.*, 129 S.W.3d 42, 47 (Tenn. 2004). To address this issue of causation, prior to the 2013 Reform Act, heart attack cases were categorized into two groups: "(1) those that are precipitated by physical exertion or strain, and (2) those resulting from mental stress, tension, or some type of emotional upheaval." *Id.* (citing *Bacon v. Sevier Cnty.*, 808 S.W.2d 46, 49 (Tenn. 1991)). Heart attacks resulting from physical strain have been found compensable even if the physical stress was an ordinary part of the employee's work, with it making no difference whether the employee suffered from preexisting heart disease. *Id.* However, when a heart attack is caused by a mental or emotional stimulus, "the ordinary mental stress of one's occupation" is insufficient to justify an award of benefits. *Id.* at 48 (citing *Cunningham v. Shelton Sec. Serv., Inc.*, 46 S.W.3d 131, 136–37 (Tenn. 2001)). As a result, the employee has been

6

required to show that the heart attack was "immediately precipitated by a specific acute or sudden stressful event, rather than generalized employment conditions." *Id.* at 47–48 (quoting *Bacon*, 808 S.W.2d at 52). Thus, "if a worker's heart attack is caused by a mental or emotional stimulus rather than physical exertion or strain, there must be a '[climactic] event or series of incidents of an unusual or abnormal nature' if a recovery is to be permitted." *Id.* at 48 (quoting *Bacon*, 808 S.W.2d at 52).

The Appeals Board addressed the impact of the 2013 Reform Act on heart attack cases in *Mitchell v. Bunge North America*, No. 2016-08-1131, 2019 WL 4568184, at *6 (Tenn. Workers' Comp. App. Bd. Apr. 16, 2019). The Appeals Board specifically applied the standards developed in pre-reform case law in the context of the new requirement that an injury arise "primarily out of" the employment. It stated that "while it still makes no difference that the employee, prior to the heart attack, suffered from preexisting heart disease or that the heart attack was precipitated by the usual physical strain of the employee's job, the proof must now establish the heart attack arose *primarily* from the employment considering all causes." *Id.* at *6. With respect to heart attacks involving emotional stress, worry, or shock, the Appeals Board stated that "the proof must establish that the heart attack resulted from a stressful incident of abnormal or unusual proportions arising primarily out of the employment rather than the day-to-day mental stresses and tensions experienced by an employee as part of his or her job." *Id.*

Here, the Trial Court and the Appeals Board applied *Mitchell* and concluded that Employee's heart attack arose primarily out of his employment. In its decision, the Trial Court pointed to Employee's physical exertion of climbing a fourteen-foot ladder and arranging scrap metal in a hot trailer. The Trial Court also found that Employee had encountered "a sudden and unusual stressful event when he was stopped by law enforcement when driving safely and told metal was falling from his trailer." The Trial Court determined that "[t]hose events were sudden and unusual, as a driver is not exposed to interactions with law enforcement as an ordinary part of his job, particularly when driving safely or when unknown to him, metal was falling from a trailer he was responsible for."

The Appeals Board affirmed. Before the Appeals Board, Employer argued that Mrs. Taylor failed to affirmatively show that the traffic stop was abnormal or unusual for a commercial truck driver. The Appeals Board rejected this argument, reasoning that Employer's position disregarded Deputy Poteet's testimony of Employee's nervousness, Mr. Dabbs's testimony that he could not recall other instances of employees being pulled over to secure their truckload, and Dr. Kanagasundram's testimony that the traffic stop would be "quite a stressful event." The Appeals Board concluded that there was nothing in the record to suggest that this was an "ordinary stress" of Employee's job as a truck driver. As a result, the Appeals Board concluded that "the evidence does not preponderate

against the court's determination that Employee suffered a fatal heart attack primarily caused by the emotional stress of the traffic stop combined with the physical exertion associated with climbing into the trailer to secure the load."

Before this Panel, Employer does not dispute that the combined emotional stress and physical exertion was more than fifty percent the cause of Employee's heart attack and resulting death. Employer also does not contest that Employee's interaction with law enforcement may have been an abnormal mental stressor for Employee. Instead, Employer argues that the Appeals Board erred in considering whether the traffic stop was subjectively an abnormal or unusual emotional stressor for Employee, rather than an objectively abnormal or unusual emotional stressor for a professional truck driver. Without sufficient proof that the mental stressor would be objectively abnormal or unusual for a truck driver generally, Employer asserts that Mrs. Taylor had to establish that Employee's physical exertion alone was more than fifty percent the cause of the heart attack. Because the medical proof did not establish this fact, according to Employer, Mrs. Taylor is not entitled to benefits.

We disagree. As a threshold matter, this Panel questions whether, following adoption of the 2013 Reform Act, there remains a requirement that a heart attack caused by a mental or emotional stimulus be precipitated by an event "of an unusual or abnormal nature if a recovery is to be permitted." *Clark*, 129 S.W.3d at 48 (citation modified). That requirement developed in pre-reform case law as courts wrestled with causation, explaining that employment does not cause a heart attack simply because the heart attack occurred at work. However, under the current workers' compensation law, an injury is compensable only if it arises primarily out of and in the course and scope of employment, which requires a showing by a preponderance of the evidence that the employment contributed more than fifty percent in causing the injury, considering all causes. Tenn. Code Ann. § 50-6-102(12). In addition, an injury is accidental "only if the injury is caused by a specific incident, or set of incidents" that are "identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(12)(A). There is nothing in the statutory language that requires an injury-causing "specific incident" to be "of abnormal or unusual proportions." We further note that case law in this area does not address instances in which both a physical exertion and mental stressor combine to amount to greater than fifty percent of the cause of a heart attack. Accordingly, it is unclear whether an "abnormal or unusual" event is required where the heart attack is precipitated by emotional and physical stressors. However, we need not decide for purposes of this appeal whether or under what circumstances the "abnormal or unusual" requirement from pre-reform case law still applies because the record supports a finding of compensability regardless.

We disagree with Employer's assertion that the Appeals Board applied a subjective standard to determine if this was an unusual or abnormal event. As the Appeals Board

8

noted, "determinations by a court as to what constitutes an abnormal or unusual mental stressor are fact specific." While the subjective impact on the particular employee at issue should not be considered, the court should consider the totality of the circumstances and specific facts of the case before it. *See Cunningham*, 46 S.W.3d at 137 (concluding that, although verbal confrontations were common in employee's job as a security guard, customers' threat to "return and kill him" was an "additional circumstance" that warranted finding employee's heart attack arose "from something beyond the norm, even for a security guard"). From those specific details, the court must determine whether the heart attack arose from an incident of abnormal or unusually stressful proportions for workers in that field. *See id.*; *see also Bacon*, 808 S.W.2d at 53 ("[E]very stress and strain of daily living or every undesirable encountered experience in carrying out the duties of an employment relationship is not embraced by the worker[s'] compensation scheme." (citing *Allied Chem. Corp. v. Wells*, 578 S.W.2d 369, 372 (Tenn. 1979))). Here, the Trial Court and Appeals Board did just that.

The record clearly establishes that this was not a "routine traffic stop" typical for professional truck drivers. Employee was pulled over and asked to exit the vehicle before being told why. Unbeknownst to him, large pieces of metal were falling out of his trailer as he drove through an active construction zone. There are no reports that he was driving unsafely at the time, and Employee had no record of poor performance as a driver. Employee was then told he could not leave the scene unless he rearranged several large pieces of steel on the side of the road, despite the fact that a machine typically loaded his trailer. Employee then climbed up and down into a large trailer on a hot summer day. Employer's Vice President of Operations testified that there had been no other instances in the prior year of any of Employer's drivers being pulled over and instructed to rearrange their loads. Deputy Poteet also testified, unrefuted, to Employee's nervous demeanor. Finally, Dr. Kanagasundram was emphatic in his medical causation testimony that being pulled over would be "a highly stressful event" for a professional truck driver. We conclude this record supports a finding that Employee was subjected to an unusually stressful, abnormal event which precipitated his heart attack.

We lastly address Employer's assertion that this holding will serve to convert every traffic stop into an abnormal or unusual event for professional drivers. This is incorrect. This Panel's holding is limited to the totality of the circumstances of this specific case. The totality of the circumstances here conforms with the Appeals Board's finding that the heart attack "resulted from an incident of abnormal and unusual stressful proportions for workers in that field."

## Conclusion

For the foregoing reasons, we affirm the judgment of the Appeals Board. Costs are

taxed to Dale's Recycling and Insurance Company of the West, for which execution may issue if necessary.

 

                                           _____

                                           MARY L. WAGNER, JUSTICE